INTERNATIONAL AND GREAT NORTHERN RAILROAD COMPANY
v. THOMAS DOYLE.

1. MASTER AND SERVANT.—It is the duty of the master to furnish and maintain implements and machinery reasonably suitable to perform the work which the servant is required to do in the discharge of his duty under his employment. The degree of care and diligence with which this should be done, should be proportioned to the amount of hazard which may reasonably be anticipated as consequent upon its neglect, considering the work to be performed.
2. SAME.—When the servant accepts service upon being furnished with machinery capable of doing the work required of him, which is

ostensibly defective in some particular, by which it is obviously more dangerous than if it were complete and fully suitable, the servant has assumed the increased risk which may reasonably be anticipated from the defect, and no more; and if the defect rendered its use more hazardous than could reasonably have been discoverable by the use of ordinary care, then the master may be in default in the discharge of his duty, and may be liable for the injury produced by said defect in a manner not anticipated.

3. A SECTION HAND of a railway company, while operating a hand-car, worked at the handle to a crank, which was an octagonal-shaped piece of metal, and was not furnished with a shield of wood, as is usual, within which the handle could revolve, to save his hand he used a glove, which was caught by the handle while working the car, and his thumb was torn off in consequence. In an action against the road: *Held*, That plaintiff, to recover, should allege and prove that the use of the glove was reasonable and proper to save his hand while grasping the handle, and that the danger in other respects, from the structure of the handle, (of which he was ignorant,) was not apparent with ordinary care and attention, and that thereby he was injured.

APPEAL from Harris. Tried below before the Hon. James Masterson.

Doyle sued to recover damages for an injury to his hand, received in operating a hand-car, while in appellant's employ as a section hand on the road. It was alleged that the injury complained of resulted from the negligence of defendant in failing to provide a safe and proper hand-car for the use of the laborers on the section. The petition alleged that the handle to the crank on the hand-car which he was furnished to use, was a piece of iron or steel, "eight square," three-quarters of an inch in diameter, sixteen inches long, without any wooden movable case around it to grasp with the hands in turning the crank; that in turning the crank this handle turned in the hands, and a pair of "gloves had been provided" for the use of the person who should work that side of the car, to keep the hands from being chafed; that said handle was put in the crank as a substitute for the one (such as was on the other side) with a wooden case, in which the iron rod turned when the handle was grasped and the crank turned.

The petition alleged that petitioner, "in the performance of his duty, under the direction of said foreman or boss, in utter ignorance of the danger he was incurring, put the said mittens on his hands, and whilst so propelling the said hand-car, &c., the mitten on his right hand became entangled with and fastened to said handle, &c., and his thumb was torn off, without any fault of petitioner." Again: " Petitioner was ignorant that the said hand-car was dangerous, by reason of said handle being so fixed and arranged, until after the happening of the event aforesaid, and was in no way blamable for the result of the action of said handle." Again, in an amended petition, the plaintiff alleged that "he was wholly ignorant of any danger incurred by using the hand-car"; that he "used it under the direction of the section boss"; that he "used it in a careful, prudent manner," and "in no manner contributed to his injuries by any carelessness or negligence on his part."

The defendant filed (1) general exceptions; (2) special exceptions, that the petition did not aver that the plaintiff did not know, or by the use of ordinary care could have known, the defects complained of; (3) a general denial; and (4) a special plea, that the hand-car was the implement given to plaintiff and others to work with, and if it was out of repair or unsafe, the same was known to him, or by ordinary case could have been known.

The court charged, in effect—

1. That the company must have proper implements, but was not liable for all omissions of its servants, by which a co-servant is injured.

2. That if plaintiff knew, or could reasonably have known, of the defect equally with the company, and continued in its employment, he could not recover.

3. That plaintiff would be presumed to know of the defect, if by ordinary attention he could see it.

4. If defendant's agent in charge knew of the defect, and plaintiff did not, or could not, discover it by the use of ordi-

nary attention, and was not himself guilty of negligence, he should recover.

A verdict was returned for plaintiff for $2,250, on which judgment was rendered, and defendant appealed.

The plaintiff below showed, by his own testimony, that he was employed, and began work in the capacity alleged, on the 9th of March, 1874; that the hand-car is used by the section men to ride on and carry their working tools from place to place, and he rode on it on the 9th and 10th, and on one of these days worked at the handle at which he was injured on the 11th. One of the handles was an iron spindle, that revolved within a wooden shield, that remained stationary within the hands of the operator. The other, and that at which he was injured, had been lost, and in place of it was an eight-square rod of iron or steel, about three-fourths of an inch in diameter, and about sixteen or eighteen inches long, which revolved within the hand when operating the car. This was made fast in the crank, and the injury was not caused from the handle breaking or giving way in any particular. He admits that this handle was open to view, in no way concealed or covered, and that he knew its character and condition as well before as after the injury. He found a pair of leather gloves, or mittens, on the car, which the men used when operating at the crank at which he was injured; but he had not used them previous to the time he was injured, and did not know how they came there, but had never known a railroad company to furnish gloves to its laborers. He further stated that the crank-and-handle cars are now going out of use, and that at the time of the accident there were on the car, besides himself, the foreman and three others of his co-laborers.

The next and only witness for the plaintiff as to the injury, testified that he had been in same employment since February 9, 1874, and was on the car at the time of the occurrence. He described the make of the car and the handles, substantially the same as the plaintiff, showed that it had two

cranks and handles, and was operated by one man turning at each at the same time. When he began work on that section, he found the handles the same as when plaintiff was injured, and he also found the glove on the car, but did not know who furnished it. He supposed the glove was used by the men to keep their hands from chafing, and had frequently worked at the handle at which plaintiff was injured. Says he never knew any one hurt at the handle at which the plaintiff was injured, except him; but a man named McDonald had been hurt at the other handle, by getting his sleeve caught in it. He further stated that he heard the foreman of the section report the hand-car to the road-master, and threaten to throw it in the ditch, because the men were afraid to work it, and gave as a reason, that a man had been hurt by having his sleeve caught when he was operating the handle opposite to that at which the plaintiff was injured.

For the defense, the section foreman testified, that he had been in same employ on same section since 1st of February, 1874. A section is usually six or seven miles long. Each section has a hand-car for the use of the men employed on it, which is furnished, as are the working tools, by the railroad company, and is operated by the hands using it as their business may require. The car and working tools of each section are under the care of the section foreman. At the time of this accident he had four men on the car with him, this plaintiff being one, and the witness was operating one handle, and the plaintiff the other. The handle at which plaintiff was hurt was on the crank when witness came to work on that section, and had never come out or given way, nor did it give way when the plaintiff was injured. He also found the gloves on the car when he was first employed; don't know how they came there; sometimes they were used, and sometimes not; but knows that appellant does not furnish gloves for its hands to work in. He says that in operating the car, the section men take it by turns, and he has worked at both handles. Says he reported the car to the road-master

as a slow-running car—so much so, that it delayed him in the prosecution of his work; but states expressly that he never reported it as dangerous.   The handle was in full view, where any one using it could see it, and the plaintiff was in the regular discharge of his duty when injured.   These are the material facts in proof on the trial.

*Baker & Botts*, for appellant, contended, that if appellee saw and knew the character of the handle by which he was injured, and with this knowledge continued to use it, he thereby assumed the risk, and cannot recover; citing Whart. on Neg., secs. 214, 217;  Greenleaf *v.* Ill. Central R. R., 29 Iowa, 14;  Vicksburg and Meridian R. R. *v.* Wilkins, 47 Miss., 404;  Devitt *v.* Pacific R. R., 50 Mo., 302;  Fifield *v.* R. R. Co., 42 N. H., 240;  Laning *v.* N. Y. Central R. R., 49 N. Y., 534;  Wright *v.* R. R. Co., 25 Id., 562;  Moss *v.* Johnson, 22 Ill., 642;  63 N. Y., 449.

*W. P. & E. P. Hamblen* and *Crank & Webb*, for appellee.— We hold that the petition sets out a cause of action, and was rightly sustained by the court below.   It alleges " that petitioner had been but two days in defendant's employ, and was wholly ignorant of any danger incurred by using said hand-car; that he used the same under the direction of said section boss, as was his duty; that he used the same in a careful and prudent manner, and in no manner contributed to his injuries by negligence."

And we are sustained by the following authorities:

" If a person of ordinary prudence would not have believed that the servant could, in the regular discharge of his duties, be injured by the defect, the servant may disregard it, without losing the right to complain, if while pursuing his ordinary course he suffers from such defect."   (Shear. & Red. on Neg., sec. 95, cites Snow *v.* Housatonic R. R., 8 Allen, 441; Perry *v.* Marsh, 25 Ala., (N. S.,) 659.)

" Nor even where the plaintiff sees that the defendant has

been negligent, is he bound to anticipate all the perils to which he may possibly be exposed by such negligence, or even to refrain absolutely from pursuing his usual course, on account of risks to which he is probably exposed by the defendant's fault. Some risks are taken by the most prudent men; and the plaintiff is not debarred from recovery for his injury, if he has adopted the course which most prudent men would take under similar circumstances." (Shear. & Red. on Neg., sec. 31.)

We consider it a well-settled principle of law, that the employer is bound to furnish his servant with suitable instruments and means with which to carry on his work. (Coombs *v.* New Bedford Cord Co., 102 Mass., 572; The Chicago and Northwestern R. R. *v.* Swett, 45 Ill., 197; Same *v.* Jackson, 55 Ill., 492.)

All the witnesses in this case who knew anything of the machinery, testified that it was not suitable; that the hand-car was dangerous.

Is the appellee chargeable with that knowledge of the danger of the hand-car as to defeat this action? We think not. He testifies positively that he was ignorant of any danger in the use of it; that he had never used one of those kind of cars before, and that he had only been on this section two days. Their own witness testified that it was not dangerous if used with care; that he used it, and men of his class had used it, since he was on the section (some three months).

" Where the negligence of the plaintiff is relied upon to defeat his recovery, he must have been guilty of at least ordinary negligence. His failure to take unusual care is no defense to the action." (Shear. & Red. on Neg., sec. 29; Ernst *v.* Hudson River R. R., 35 N. Y., 9–26.)

"The plaintiff is not required to exercise more care than is usual under similar circumstances among careful persons of the class to which he belongs." (Mackay *v.* N. Y. Central R. R., 35 N. Y., 75, 80.)

In Huddleston *v.* Lowell Machine Shop, 106 Mass., 282,

it was held, " that it was a question for the jury whether the
employé was acquainted, or should have made himself ac-
quainted, with the risk," where the servant had sued his
master for personal injuries received by him in breaking and
falling through a floor in his master's shop over which it was
his duty to pass, although it was proved that the servant knew
that the floor was decayed and had holes in it.

And the same rule was held in the case of The Chicago
and Northwestern R. R. *v.* Jackson, 55 Ill., 492. (Railroad
Co. *v.* Gladman, 15 Wall., 401; Johnson *v.* Hudson River
R. R., 20 N. Y., 65; Wilds *v.* Same, 24 N. Y., 430.)

The appellant has wholly failed to prove any contributory
negligence on the part of appellee.

But the learned counsel very ingeniously construe the term
" defect," as used by the court below, in the second, third,
and fourth instructions, to mean the substitution of the iron
or steel handle for the one with a wooden shield, originally
belonging to the car.

We do not think the court below so intended the instruc-
tion, nor was it so construed by the jury.

We think the learned judge used it in its legal sense, as
defined by Bouvier, " the want of something required by
law"; as applied to this case, the want of a safe and suitable
material for the performance of his duties; and are confirm-
ed in our opinion by the court, in refusing to set aside the
verdict of the jury under said charge.

The appellee did know that the crank had an iron handle,
where it should have had a wooden shield revolving around
an iron spindle; but did not know the same to be dangerous.

Where, however, there is any doubt whether the employé
was acquainted with the risk, the question of his negligence
in this respect is for the jury. (Whart. on Neg., sec. 217;
Huddleston *v.* Lowell Machine Shop, 106 Mass., 282.)

The defendant is not necessarily excused merely because
the plaintiff knew that some danger existed through the
defendant's neglect, and voluntarily incurred such danger.

The amount of danger, and the circumstances which led the plaintiff to incur it, are for the consideration of the jury. (Reeves *v.* Delaware R. R., 30 Penn., 454.)

This car was placed upon the road by some one superior to appellee in authority, and he was acting under such authority. The jury might reasonably infer that those placing it on the road knew its condition. (The Chicago and Northwestern R. R. *v.* Jackson, 55 Ill., 492.)

The learned counsel for the plaintiff in error do not complain of the charge of the court; they say it was fairly given upon the facts. They rely upon no errors of the court's ruling, but complain solely of the verdict of the jury. There was evidence, we submit, to sustain the verdict; and under a long line of decisions, from the first Texas Reports to the present time, we hold that the appellate court will not disturb the verdict of the jury, where there is evidence tending to support it.

ROBERTS, CHIEF JUSTICE.—The errors assigned are, that the court erred in overruling the exceptions to the petition, and that the verdict of the jury was not supported by the evidence, and was contrary to the charge of the court.

In considering the first assignment of error, the following general propositions may be announced, in determining the sufficiency of the petition:

That it is the duty of the master to furnish and maintain implements and machinery reasonably suitable to perform the work which the servant is required to do in the discharge of his duty under such employment. (Houston and Texas Central Railway Co. *v.* Dunham, just decided.)

The degree of care and diligence with which this should be done, should be proportioned to the amount of hazard which may reasonably be anticipated as consequent upon its neglect, considering the work to be performed. (1 Redfield, Law of Railways, sec. 131, p. 547.)

When the servant accepts service, upon being furnished

with machinery capable of doing the work required of him, which is ostensibly defective in some particular, by which it is obviously more dangerous than if it were complete and fully suitable, the servant has assumed the increased risk which may reasonably be anticipated from the defect, and no more; and if the defect rendered its use more hazardous than could reasonably have been discoverable by the use of ordinary care, then the master may be in default in the discharge of his duty, and may be liable for an injury produced by such defect, in a manner not anticipated. (Snow *v.* Housatonic R. R. Co., 8 Allen, 444; Sherman & Redfield on Negligence, sec. 95, p. 111.)

These general propositions may be subject to qualification by other facts, which it is not necessary to notice in reference to the facts of this case.

To apply these propositions: The petition shows that the company furnished the employés a hand-car, not of the most usual or of the most approved construction, which was sufficient to enable them to perform their work by the use of it, although it might have been more dangerous to those who used it, than if it had been worked with levers instead of with cranks. It showed also that it had an ostensible defect, by a substituted handle to one of the cranks, that must have been known to any one who worked with said handle in moving the hand-car. The obvious hazard in the use of said handle, over and above that of the handle which had been lost, and for which it had been substituted, which might have been readily anticipated, was, that in turning in the hand, and being eight-sided, and only three-fourths of an inch in size, the hands would be bruised or chafed, which may have rendered it proper, if not necessary, to use gloves, if they could be procured, to prevent that injury.

The company may not have been bound to the highest degree of even ordinary care in having the handle repaired and restored as it was originally, because the danger in moving a hand-car would ordinarily not be great, and the injury

to the hands was all that would ordinarily have been expected from the use of the substituted handle.

That was the risk which the employé had taken and assumed by accepting service with machinery whose ostensible defect was well calculated to produce that injury.

This brings us to the gist of the matter, which is,—Was the plaintiff justified in using the gloves to prevent the injury to his hands; and if so, was there, by their use, in connection with such a defective handle in such a structure, an increased hazard, which he was not apprised of, and could not have known by reasonable care and attention, and had not been informed of by those who controlled him in his employment?

The petition contains, in narrative form, a full account of the machinery of the hand-car, and its defect, and of the manner in which the injury was inflicted; from which it is evident that the injury to the hand was caused by the glove used in holding the handle while turning the crank. If the glove had not been used, the hand might have been lacerated, but the thumb could not have been torn off. The glove was no part of the hand-car; nor is it alleged that the glove was furnished by the company, to be used by the employés in working the crank, to make good the defect in the handle. It may be a fact, that the shape and size of the handle, as well as its being fixed, greatly increased the danger when the gloves were used; and therefore the reasonableness and propriety of their use become a material fact, which should be put in issue, to be determined by the jury under the direction of the court.

It would, therefore, have been proper for the petition to have stated, in addition to what was stated, that the use of the gloves by the plaintiff was reasonable and proper to relieve himself from the injury to his hands consequent upon the defect of the substituted handle; and that when so used the defect in the handle, from its size, shape, and fixedness, and the structure of the hand-car, constituted it a dangerous machine, to an extent of hazard in the working of it beyond

that which was apparent with ordinary care and attention, of which he was ignorant; and that thereby he was injured. These are distinct facts, upon which his right of action depended, as may be deduced from the facts that are stated in the petition. If they had been alleged, and put in issue by the general denial, the evidence, as well as the charge of the court, should have had a direct reference to them, as the important matters in issue between, and contested by, the parties.

If, on the trial, it had been shown that the use of the gloves was not reasonable and proper, or that thereby the danger of the machine with its defects was not increased, or should have been known by reasonable care and attention, or that the injury occurred by his own carelessness in using them, his right of action might have been defeated. It might not have been necessary to have been thus minute in the allegations of its being an unsafe or dangerous machine, but, having detailed facts showing that the injury was caused proximately by his use of the gloves, which were no part of the hand-car, the petition should then have gone further, and accounted, by direct averments, for the use of the gloves.

What has already been said will suffice to show, in reference to the other assignments of error, that the case was not tried upon its true merits, either in its facts or in the law applicable to them. It is plain that the verdict was contrary to the charge of the court; for, in each of the items of charge, the jury were told, in effect, that the plaintiff could not recover if he knew of the defect, or could have discovered it by ordinary care and attention. He could not help knowing of the defect in the handle, and the general structure of the hand-car.

It was not alleged in the petition that he did not know of the defect of the handle, or of any other defect; nor was it put in issue, except by the special plea of the defendant. The allegation in the petition, was that plaintiff was ignorant of the risk he was running in turning the crank with the sub-

stituted handle, under the direction of the section foreman; and that he was ignorant that the hand-car was dangerous by reason of the handle being so fixed and arranged, and that he was wholly ignorant of any danger incurred by using the hand-car. Thus, by this mode of expression, it was taken for granted that the operation performed was dangerous, without any direct allegation of that fact, and without denying his knowledge of the defect in the handle, in any part of the petition. Neither the special plea nor the charge was responsive to the cause of action set up, or attempted to be set up, in the petition. The verdict of the jury is founded on a state of law not contained in the charge of the court, and upon a state of facts not distinctly and adequately presented in the petition, so as to reach the true merits of the case.

Judgment reversed and cause remanded.

REVERSED AND REMANDED.