**UNITED STATES COURT OF APPEALS**
**For the Fifth Circuit**

No. 93-4115

ROXANNE HOOK,

Plaintiff-Appellee,

versus

THE MORRISON MILLING COMPANY,

Defendant-Appellant.

Appeal from the United States District Court
for the Eastern District of Texas

(November 14, 1994)

Before JONES and DeMOSS, Circuit Judges, and COBB,[*] District Judge.

DeMOSS, Circuit Judge:

The Morrison Milling Company ("MMC") appeals a district court's remand of Roxanne Hook's negligence action against the company. MMC argues that Hook's negligence claim is preempted by the Employment Retirement Income Security Act of 1974 ("ERISA"). 29 U.S.C. §§ 1001-1461. Because we conclude that Hook's claim does not relate to MMC's ERISA plan, and therefore is not preempted, we affirm the district court's decision to remand Hook's suit to state court.

---

[*]District Judge of the Eastern District of Texas, sitting by designation.

I.

Texas' workers' compensation scheme resembles the workers' compensation schemes of many other states. The Texas Workers' Compensation Act ("TWCA"), for example, provides that any benefits distributed pursuant to the TWCA are an employee's exclusive remedy for any work-related injuries or death. TEX. REV. CIV. STAT. ANN. art. 8308-4.01(a) (Vernon Supp. 1993).[1] Texas' scheme, however, differs from most states' in one important respect: employers may choose not to carry insurance coverage under the TWCA, id. art. 8308-3.23(a).[2] But the state makes that choice an unattractive one. Specifically, the TWCA vests employees of non-subscribing employers with the right to sue their employers for work-related injuries or death. Id. art. 8308-3.04. Furthermore, in any such action, the TWCA deprives the non-subscribing employer of traditional common law defenses such as contributory negligence, assumption of the risk and the fellow servant rule. Id. art. 8308-3.03(a)(1)-(3).

Notwithstanding the risks associated with "opting out," MMC in March 1989 elected to discontinue workers' compensation insurance

---

[1]The TWCA recently was re-codified. See TWCA, 73rd Leg., R.S., ch. 269, § 1 (current version at TEX. LAB. CODE ANN. §§ 401-17 (Vernon Pamp. 1994)). Because none of the recent amendments to the TWCA are relevant to this case, we will cite to the TWCA as codified at the commencement of this suit in February 1992.

[2]As of 1990, Texas, New Jersey, and South Carolina were the only states that permitted employers to "opt out" of the state's worker's compensation scheme. The remaining 47 states required employers to carry worker's compensation insurance. Ellen S. Pryor, Compensation and a Consequential Model of Loss, 64 TUL. L. REV. 783, 801 n.50 (1990).

2

and began offering the Interim Employee Welfare Benefit Plan. The Plan pays enrollees:

> certain benefits for personal injuries suffered in the course of their employment, or for death resulting from such injuries, without the necessity of showing negligence on the part of the Company, and to provide for the continuation or partial continuation of their weekly salary or wages that would otherwise be lost as a result of their inability to work because of injury or illness incurred on the job.

The parties do not dispute that the Plan is governed by ERISA. See 29 U.S.C. § 1002(1). While participation in the plan is voluntary, MMC requires employees who elect to participate to sign an enrollment and waiver form, which is an entirely separate document. Paragraph 3 of the form states:

> In consideration of my election to enroll in, and thus become eligible to receive benefits under, the Interim Plan, I hereby waive my rights under TEX. REV. CIV. STAT. ANN. art. 8306, § 4,[3] to bring suit and recover judgment against the Company and its directors, officers, agents, and employees for any damages sustained by reason of any personal injury received in the course of my employment by the Company, or by reason of death resulting from such injury. By electing to enroll in the Interim Plan, I agree that benefits payable under the Interim Plan shall be the exclusive remedy for me or my legal beneficiaries arising from any such personal injury or death.

Hook began working for MMC in October 1990 after she elected to participate in the Plan and completed the enrollment and waiver form. In December 1990, Hook fell down a staircase at work and was injured. Hook filed for benefits under the Plan with MMC, the Plan's administrator. The Plan paid her a total of $5,383.03:

---

[3]Article 8306, § 4, is the predecessor to articles 8308-3.03 and -3.04, wherein the employee of a non-subscribing employer is vested with the right to sue that employer for work-related injuries or death.

$4,749.28 for medical expenses and $633.75 for salary continuation benefits. Hook then left her job with MMC in July 1991.

In February 1992, Hook filed a wrongful discharge and negligence action in Texas state court against MMC. MMC removed the case to federal court, arguing that the wrongful discharge claim was preempted by ERISA. Hook then filed her first motion to remand the case back to state court, which the federal district court denied in July 1992 on the grounds that ERISA preempted her wrongful discharge claim. Hook amended her petition to omit the wrongful discharge claim, leaving the negligence claim as the sole basis for her suit. She again moved to remand the case, claiming that the negligence action was governed by state law.

In December 1992, the district court granted Hook's second motion to remand. The court addressed two possible grounds for preemption and rejected them. First, the court held that Hook's negligence action is not preempted because it does not relate to MMC's ERISA Plan. Second, the court concluded that the waiver does not independently trigger preemption because it is incidental to her negligence action and that, alternatively, such waivers are void under Texas law.[4] MMC then appealed the court's decision to

---

[4]The court specifically relied on the TWCA's proscription against waivers, which states "an agreement by an employee to waive the employee's right to compensation is void." TEX. REV. CIV. STAT. ANN. art. 8308-3.09. The TWCA defines compensation as "payment of medical benefits, income benefits, death benefits, or burial benefits." Id. art. 8308-1.03(11). As will be apparent below, we do not reach the court's alternative holding that the waiver is void under Texas law because, like the district court, we conclude that ERISA does not preempt Hook's claim. The question of whether the waiver is void will be answered by the state court upon remand.

remand Hook's negligence action. Hook did not file a brief on appeal and instead chose to rely on the district court's opinion as her brief. After oral argument, we requested[5] the United States and the State of Texas to submit amicus curiae briefs to address the significant issues raised in this case, particularly because Hook did not file a brief. Amici's briefs were thorough and helpful, and we thank the United States and Texas for their assistance.

## II.

Before analyzing our appellate jurisdiction over this appeal, we first note that the district court's subject matter jurisdiction was proper at all times. To begin with, this case was properly removed pursuant to 28 U.S.C. § 1446. Hook's original petition alleged, inter alia, that she was wrongfully discharged in retaliation for filing a workers' compensation claim. MMC removed the suit to federal district court, whereupon Hook filed her first motion to remand. The district court treated Hook's allegation as a claim that she was fired in retaliation for filing a claim under MMC's ERISA plan.[6] Accordingly, the court concluded that her wrongful discharge claim was preempted because the Supreme Court

---

[5]See FED. R. APP. P. 29.

[6]We note that the record supports the district court's characterization of Hook's original petition as alleging wrongful discharge for filing a claim under MMC's ERISA plan and not for filing a workers' compensation claim. First, whereas Hook did, in fact, file a claim under MMC's plan, she never filed a workers' compensation claim. Second, to the extent she intended to file a workers' compensation claim, Hook's efforts would have been meaningless because MMC's plan is not a workers' compensation plan.

5

has established that ERISA preempts a Texas wrongful discharge claim to the extent that that claim is dependent upon the existence of an ERISA plan. See Ingersoll-Rand Co. v. McClendon, 111 S. Ct. 478, 482-84 (1990) (ERISA expressly preempts a Texas wrongful discharge claim that is premised on the existence of an ERISA plan); see also Anderson v. Electronic Data Sys. Corp., 11 F.3d 1311, 1313-14 (5th Cir. 1994) (same). Because allegations of retaliation for filing a claim under an ERISA plan necessarily assert a claim that is dependent upon the existence of such a plan, MMC's removal of Hook's claims was unquestionably proper. Furthermore, Hook's subsequent deletion of her wrongful discharge claim does not render MMC's removal improper. We have stated on several occasions that a post-removal amendment to a petition that deletes all federal claims, leaving only pendent state claims, does not divest the district court of its properly triggered subject matter jurisdiction. Brown v. Southwestern Bell Tel. Co., 901 F.2d 1250, 1254 (5th Cir. 1990); In re Carter, 618 F.2d 1093, 1101 (5th Cir. 1980). In a jurisdictional inquiry, we look at the complaint as it existed at the time the petition for removal was filed, regardless of any subsequent amendments to the complaint. Anderson, 11 F.3d at 1316 n.8.

The issue of whether we have appellate jurisdiction arises from the district court's decision to remand the case to state court. On the one hand, we do not have jurisdiction to review a remand order if it is made pursuant to 28 U.S.C. § 1447(c). In particular, if a district court remands a case because of either a

6

defect in removal procedure or lack of subject matter jurisdiction, we are powerless to review that remand order. 28 U.S.C. § 1447(d); see also Thermtron Prods. v. Hermansdorfer, 423 U.S. 336, 350-52 (1976); Burks v. Amerada Hess Corp., 8 F.3d 301, 303-04 & n.4 (5th Cir. 1993). On the other hand, if the court provides a reason unrelated to § 1447(c), such as pendent jurisdiction, then we may properly review that order. We have stated that "a federal district court has discretion to remand a properly removed case to state court when all federal-law claims have been eliminated and only pendent state-law claims remain." Jones v. Roadway Express, Inc., 936 F.2d 789, 792 (5th Cir. 1991) (citing Carnegie-Mellon Univ. v. Cohill, 484 U.S. 343 (1988)). If the court exercises its discretion to remand pursuant to this doctrine, then we may review the remand order. Carnegie-Mellon, 484 U.S. at 343 n.11 ("the remand authority conferred by the removal statute and the remand authority conferred by the doctrine of pendent jurisdiction overlap not at all"). The district court below made clear that it was remanding Hook's state law negligence claim, i.e., her only remaining claim, pursuant to its discretion. We therefore may review the court's remand order. Burks, 8 F.3d at 303-04.

### III.

### A.

We begin by establishing the appropriate standard of review. If a district court's decision to remand a case to state court is based on its discretion, then we obviously review that decision for abuse of discretion. In Re Wilson Indus., 886 F.2d 93, 95-96 (5th

7

Cir. 1989). The determination of whether the court has that discretion, however, is a legal one, which we review de novo. Burks, 8 F.3d at 304. In this case, we therefore will review the district court's preemption analysis de novo. If we conclude that ERISA does not preempt Hook's suit, meaning no federal claim exists that would require the district court to maintain jurisdiction, we then will review the court's decision to remand for abuse of discretion.

B.

Section § 514(a) of ERISA, 29 U.S.C. § 1144(a), expressly provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan described in section 4(a) and not exempt under section 4(b)." The Supreme Court has established that "[a] law `relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to the plan." Shaw v. Delta Air Lines, Inc., 463 U.S. 85, 96-97 (1983). The Court has further stated that its interpretation of "relate to" effectuates "the `deliberately expansive' language chosen by Congress." District of Columbia v. Greater Washington Bd. of Trade, 113 S. Ct. 580, 583 (1992) (quoting Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 46 (1987)). Thus, ERISA preempts any state law[7] that refers to or has a connection with an ERISA plan even if that law (i) is not specifically designed to affect such plans, Shaw, 463 U.S. at 98,

---

[7]ERISA § 514(c)(1) defines "state law" to mean "all laws, decisions, rules, regulations, or other State action having the effect of law." 29 U.S.C. § 1144(c).

8

(ii) affects such plans only indirectly, <u>Alessi v. Raybestos-Manhattan, Inc.</u>, 451 U.S. 504, 525 (1980), or (iii) is consistent with ERISA's substantive requirements, <u>Metropolitan Life Ins. Co. v. Massachusetts</u>, 471 U.S. 724, 739 (1985).  The Supreme Court reiterated these concepts in <u>FMC Corporation v. Holliday</u>, 111 S. Ct. 403, 407-09 (1990), when it held that a Pennsylvania statute which expressly prohibited ERISA plans from subrogating damages that plan participants had recovered in tort actions arising out of automobile accidents is preempted.[8]

But as broad as ERISA's preemptive scope has been stated to be, it has its limits.  The Supreme Court noted in <u>Shaw</u> that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law `relates to' the plan." <u>Shaw</u>, 463 U.S. at 100 n.21.  The Court's warning in <u>Shaw</u> on the limits of ERISA preemption stems from the Court's view that ERISA's scope, though comprehensive, remains subject to the traditional principle of federalism.  In determining ERISA's preemptive scope, the Court has advised that we "must be guided by respect for the separate spheres of governmental authority preserved in our federalist system." <u>Alessi</u>, 451 U.S. at 522; <u>see also</u> <u>Memorial Hosp. Sys. v. Northbrook Life Ins. Co.</u>, 904

---

[8]Our colleague in dissent argues that <u>FMC Corporation</u> controls this case.  We find that case distinguishable for two reasons. First, the statute in <u>FMC Corporation</u> expressly referred to ERISA plans. <u>FMC Corp.</u>, 111 S. Ct. at 408.  Second, the anti-subrogation statute triggered ERISA's "savings" and "deemer" clauses. <u>Id</u>. at 409-11 (citing 29 U.S.C. § 1144(b)(2)(A),(B)).  Neither of those circumstances exist with regard to Hook's common law negligence claim against MMC.

F.2d 236, 244 (5th Cir. 1990).  To further aid us in narrowing our preemption inquiry, we have devised a two-prong test.  We have found preemption of a state law claim if (1) the claim addresses areas of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan, and (2) the claim directly affects the relationship among the traditional ERISA entities (i.e., plan administrators/fiduciaries and plan participants/beneficiaries).  Memorial Hospital, 904 F.2d at 245; see also Sommers Drug Stores Co. v. Corrigan Enterprises, Inc., 793 F.2d 1456, 1467-68 (5th Cir. 1986).

C.

The United States and Texas contend that Hook's negligence cause of action does not "relate to" MMC's ERISA plan.[9]  Both argue that Hook's cause of action involves only the employer/employee relationship between the two parties and, therefore, does not relate to MMC's ERISA plan.  In particular, they argue that Hook's cause of action stems from MMC's failure to maintain a safe workplace and not from a dispute over the administration of MMC's plan or the disbursement of benefits from the plan.  Hook's claim, in fact, would exist whether or not MMC had established an ERISA plan.  This case, amici argue, is controlled by Sommers Drug Stores, 793 F.2d at 1467-68, which involved a suit by an ERISA plan against its parent company and the company's principal shareholder.

_____

[9]Amici also raise other arguments against preemption.  Because we find their argument that Hook's claim does not "relate to" MMC's plan dispositive, we do not reach the validity of amici's alternative arguments.

The shareholder also served as the company's president, a board member, and a trustee of the company's pension plan. The plan, which was a minority shareholder in the company, alleged that the defendants breached their fiduciary duties by failing to disclose material information to the plan, in violation of both ERISA <u>and</u> common law. We held that ERISA did not preempt the plan's common law claim because the claim affected <u>not</u> the parties' ERISA relationship but their relationship as corporate director and shareholder. <u>Sommers Drug Stores</u>, 793 F.2d at 1468-70. By comparison, the amici parties argue, Hook's claim affects only the parties' employer/employee relationship; MMC has an independent duty to maintain a safe workplace, and Hook alleges that MMC breached that duty. While MMC has a parallel duty with regard to the administration of its ERISA plan, the amici argue, that duty is unaffected by Hook's common law negligence suit against MMC.

As for the waiver in MMC's plan, the amici parties insist that its inclusion in the plan does not alter their analysis. The mere fact, they argue, that a court may have to consider, by looking to the plan, whether Hook has waived her claim does not mean the cause of action "relates to" MMC's plan. They argue that Hook's claim, whether or not it has been waived, does not involve the administration of MMC's plan or the disbursement of benefits under the plan. Furthermore, they contend, the waiver is nothing more than a gimmick by MMC to trigger preemption, thereby avoiding litigation in state court. The amici rely on <u>Westbrook v. Beverly Enterprises</u>, 832 F. Supp. 188 (W.D. Tex. 1993), a case remarkably

11

similar to this one.  In Westbrook, a non-subscribing employer offered an ERISA plan that provided medical benefits for work-related injuries.  The plan also contained a "waiver-of-right-to-sue" clause, whereby the employee waived his right to sue for work-related injuries in exchange for medical benefits.  In rejecting the employer's preemption claim, the court concluded that neither the cause of action nor the waiver related to the ERISA plan because both involved only the employee-employer relationship and not the administrator-beneficiary relationship.  Id. at 189-92.  Amici urge us to reach the same conclusion.  Otherwise, non-subscribing employers in Texas could avoid a variety of obligations merely by requiring employees to waive their right to sue for anything as a condition for participation in the plan.  Such a result, they conclude, is inconsistent with the goal of ERISA, which is "`to protect employee benefits, not to provide succor for schemes that are designed to take rights from employees.'"  Id. at 192 (quoting Nunez v. Wyatt Cafeterias, Inc., 771 F. Supp. 165, 169 (N.D. Tex. 1991)); see also Texas Health Enters. v. Reece, No. MO-93-CA-057 (W.D. Tex. Mar. 2, 1994); Pyle v. Beverly Enters.-Texas, 826 F. Supp. 206 (N.D. Tex. 1993); O'Neill v. Pro-Set Press, 1992 WL 404456 (N.D. Tex. 1992).

MMC's argument that Hook's claim is preempted hinges on the waiver.  MMC, in other words, bypasses the issue of whether an unsafe workplace claim, by itself, relates to an ERISA plan and argues only that the inclusion of the waiver in its plan means Hook's cause of action is one that necessarily relates to the plan.

12

MMC contends that this case is controlled by Christopher v. Mobil Oil Corporation, 950 F.2d 1209 (5th Cir. 1992). In Christopher, the employer sponsored an ERISA retirement plan that permitted employees, subject to certain criteria, to receive their pension benefits in one lump-sum payment rather than by the typical method of monthly installments. The employer subsequently modified the plan by changing the criteria that employees had to meet to qualify for the lump-sum option. The employer, however, failed to disclose the plan amendment to its employees. Several employees sued their former employer. They alleged that the employer's actions in amending the plan, and then failing to disclose the new terms of the plan, fraudulently induced them to retire earlier than they otherwise would have and, therefore, violated state common law.

We noted that a court, in addressing the employees' claims, "would have to examine, at a minimum, the operation of the plan prior to the amendment." Id. at 1218. The employees' claim therefore closely resembled employee claims of wrongful termination, wherein the employee asserts that the employer fired him to avoid vesting of pension befits. Id. (citing Ingersoll-Rand Co. v. McClendon, 111 S. Ct. 478 (1990)). We concluded that, in both instances, the employees' common law claims were preempted, i.e., the claim relates to an ERISA plan, "[b]ecause the underlying conduct at issue here cannot be divorced from its connection to the employee benefit plan." Id. at 1220. MMC insists that Christopher controls this case because a court considering Hook's claim will have to "examine" MMC's plan. The waiver, which is an integral

13

part of the plan, is also a significant factor in determining the validity of Hook's claim, MMC argues. Thus, while an unsafe workplace claim may otherwise be unrelated to an ERISA plan, MMC concludes, the claim necessarily relates to the plan once a court has to consider whether Hook has waived her claim, evidence of which is included in the plan.

In addition to Christopher, MMC relies on a Sixth Circuit opinion to argue that mere consideration of the waiver by a court triggers preemption. Van Camp v. AT&T Info. Sys., 963 F.2d 119 (6th Cir. 1992). In Van Camp, an employee, who refused to be reassigned, was faced with the option of either retiring early or being demoted. The employee chose to retire, whereupon the employee signed a statement saying he was retiring voluntarily and that he understood that his election to retire under the employer's ERISA pension plan was irrevocable. The employee later sued the employer, alleging that the employer's efforts to reassign him were discriminatorily motivated and, therefore, violated state laws against discrimination. Without relinquishing his rights under the pension plan, the employee sought back pay, front pay, and compensatory and exemplary damages.

The Sixth Circuit, relying in part on our decision in Sommers Drug Stores, held that the employee's claims were preempted. Van Camp, 963 F.2d at 122-24. The court began by noting that the employee's state law claims obviously were inconsistent with the retirement agreement: the employee claimed he was discriminatorily forced into retirement, whereas the plan indicated that he had

14

voluntarily retired. Thus, the court reasoned, the determination of whether the employer's ERISA plan was valid became the "fulcrum" upon which the case turned. Id. at 123. Because "[s]uch a determination could be made only with reference to ERISA and would affect the existing benefit plan and the relations between [the employee and the employer] as `principal ERISA entities,'" the Sixth Circuit concluded that the claims related to the plan and therefore were preempted. Id. (indirectly quoting Sommers Drug Stores, 793 F.2d at 1467). MMC maintains that Hook's claim similarly relates to its ERISA plan in that her claim is inconsistent with the plan. To consider her claim, a court must determine the validity of MMC's plan and its waiver. MMC argues that, as the Sixth Circuit concluded, such a determination involves the relationship between ERISA entities and thus comes within ERISA's preemptive sweep.

We agree with amici that Hook's claim, standing alone, is not preempted by ERISA because it affects only her employer/employee relationship with MMC and not her administrator/beneficiary relationship with the company. In this sense, the claim is distinctly different from various other common law claims found to be preempted by ERISA. In Ingersoll-Rand, for example, an employee sued his employer for wrongful discharge, alleging that the employer fired him to avoid making contributions to his ERISA-covered pension fund. The Court ruled that the employee's claim was preempted because it "makes specific reference to, and indeed is premised on, the existence of a pension plan." Ingersoll-Rand,

15

111 S. Ct. at 483. Similarly, Christopher, the case on which MMC relies, involved common law claims alleging that the employer improperly administered the company's ERISA plan. The claims clearly stemmed from the existence of an ERISA plan, such that "if the appellants' claims were stripped of their link to the pension plans, they would cease to exist." Christopher, 950 F.2d at 1220; see also Pilot Life, 481 U.S. at 47-48 (contract and tort claims alleging improper processing of ERISA benefits); Metropolitan Life Ins. v. Taylor, 481 U.S. 58, 62-63 (1987) (same); Memorial Hosp., 904 F.2d at 239, 250 (contract claim alleging improper denial of ERISA benefits); Lee v. E.I. DuPont de Nemours & Co., 894 F.2d 755, 756-58 (5th Cir. 1990) (tort claim alleging misrepresentation of details of ERISA plan); Ramirez v. Inter-Continental Hotels, 890 F.2d 760, 762-63 (5th Cir. 1989) (contract, tort, and statutory claims alleging improper denial of benefits); Cefalu v. B.F. Goodrich Co., 871 F.2d 1290, 1292-95 (5th Cir. 1989) (contract claim alleging improper denial of benefits); Degan v. Ford Motor Co., 869 F.2d 889, 893-95 (5th Cir. 1989) (same).

Hook's unsafe workplace claim, however, is totally independent from the existence and administration of MMC's ERISA plan. She neither seeks benefits under the plan nor claims that MMC improperly processed her claim for benefits. She seeks only damages for MMC's alleged negligent maintenance of its workplace. Numerous federal district courts in Texas that have concluded that a tort claim alleging an unsafe workplace does not relate to an ERISA plan. See e.g., Westbrook v. Beverly Enters., 832 F. Supp.

16

188 (W.D. Tex. 1993); Pyle v. Beverly Enters.-Texas, 826 F. Supp. 206 (N.D. Tex. 1993); Gibson v. Wyatt Cafeterias, 782 F. Supp. 331 (E.D. Tex. 1992); O'Neill v. Pro-Set Press, 1992 WL 404456 (N.D. Tex. 1992); Nunez v. Wyatt Cafeterias, 771 F. Supp. 165 (N.D. Tex. 1991). In our view, Hook's claim is even further removed from ERISA's preemptive reach than other common law claims which somehow involved an ERISA plan but nonetheless did not relate to it. In Sommers Drug Stores, for example, the ERISA plan itself sued the parent company and the company's principal shareholder for breach of fiduciary duty. We noted that although the claim seemed to affect relations among the principal ERISA entities, that appearance was misleading. Sommers Drug Stores, 793 F.2d at 1468. The claim, we found, actually centered on relations between a corporate director and a shareholder and thus was not preempted. Likewise, in Memorial Hospital, a hospital sued an insurance company for breach of contract as well as negligent misrepresentation.[10] We concluded that, while the breach of contract claim clearly was preempted because it was a claim for benefits, the negligent misrepresentation claim was not preempted because it neither sought benefits under the plan nor alleged

---

[10]The hospital specifically alleged that an agent for the insurance company informed the hospital that the wife of an employee of the insured company was, in fact, covered by the insured's policy. The hospital relied on this alleged representation and treated the employee's wife. The employee then transferred to the hospital his rights to benefits under the policy. The hospital, in turn, sought payment from the insurance company, but the insurance company informed the hospital that the employee's wife was not covered and denied the claim. The hospital then filed its suit against the insurance company. Memorial Hosp., 904 F.2d 238-39.

improper processing of benefits.  <u>Memorial Hosp.</u>, 904 F.2d at 243-50; <u>see also</u> <u>Hartle v. Packard Elec.</u>, 877 F.2d 354 (5th Cir. 1989).[11]  Thus, ERISA's preemptive scope may be broad but it does not reach claims that do not involve the administration of plans, even though the plan may be a party to the suit or the claim relies on the details of the plan.

Admittedly, the presence of the waiver in this case complicates the issue of whether Hook's claim is preempted.  Amici charge that this complication was intended.  Specifically, amici claim that MMC, by including the waiver in its plan, is attempting to avoid state court litigation simply by "don[ning] the mantle of ERISA preemption."  <u>Combined Management v. Superintendent of the Bureau of Ins.</u>, 22 F.3d 1, 5 (1st Cir. 1994).  Amici also claim that MMC's strategy, if successful, would undermine the viability of the Texas workers' compensation system, because Texas employers would have a greater incentive to opt out and defend themselves in federal court rather than opt in to Texas' system.  MMC responds that their motive is not so sinister.  Rather, MMC argues, the structure of its plan represents a reasonable accommodation between a non-subscribing employer and its employee.  In exchange for the

---

[11]<u>Hartle</u> involved an employee who sued his former employer for various tort claims arising out of his termination.  He alleged that he had a fixed-term employment contract and therefore could not be fired at will.  To prove his case, he relied on certain details in the employer's ERISA plan, to which he had contributed. We concluded that the employee's claim "does not in any manner implicate the federal regulation of employee benefit plans" because the employee neither sought benefits nor alleged improper processing.  <u>Id</u>. at 356.  Though an ERISA plan was at issue, the employee's claim was only "peripherally connected to the concerns addressed by ERISA."  <u>Id</u>.

18

employee's agreement not to sue, the employer offers workers' compensation-like benefits without the cost of complying with state regulations. Whatever MMC's motive may be, our conclusion that Hook's negligence cause of action is not preempted rests on our reading of ERISA and the numerous Supreme Court and Fifth Circuit cases interpreting it. We agree with amici that the waiver in MMC's plan does not transform Hook's claim into one that is preempted. By focusing on the waiver, MMC turns ERISA preemption analysis on its head; it argues that Hook's cause of action is preempted because the waiver, as part of the plan, relates to Hook's claim. Instead, the appropriate question in any ERISA preemption case is whether the state law relates to an ERISA plan. 29 U.S.C. § 1144(a). MMC's inverted analysis cannot be reconciled with either ERISA's statutory language or the case law interpreting it. More importantly, MMC's analysis would lead to a broad expansion of employer authority that we believe has no basis in ERISA. Specifically, MMC's analysis would enable employers to avoid <u>any</u> state law simply by referring to that law in its ERISA plan. Congress clearly did not intend to vest employers with such authority. To the contrary, ERISA was "designed to promote the interests of employees and their beneficiaries in employee benefit plans." <u>Shaw</u>, 463 U.S. at 90.

The Ninth Circuit, in <u>Employee Staffing Services v. Aubry</u>, 20 F.3d 1038 (9th Cir. 1994), rejected a similar attempt to broaden employers' authority under ERISA. In <u>Employee Staffing</u>, the employer had argued that California's attempts to enforce its

19

workers' compensation statute were preempted because the employer had already included benefits for work-related injuries in its ERISA plan.   In rejecting the employer's arguments, the Ninth Circuit reasoned:

> Syntactically, the preemption of "laws" and exemption of "plans" might be construed to place the power to exempt in the employer's hands, when it adopts a plan, instead of the state legislature's hands, when it promulgates laws.   But a construction which attributes a rational purpose to Congress makes this locus of power unlikely, because it would accidentally allow employers to avoid the century-old system of workers' compensation."

Id. at 1041.   While Employee Staffing involved ERISA's exemption for workers' compensation, we concur with its reasoning that ERISA was not enacted to allow employers to control which laws or claims are preempted and those that are not.   With the exception of Van Camp, 963 F.2d at 122-24, we find no authority for the proposition that a law or claim is preempted merely because the employer crafts its ERISA plan in such a way that the plan is inconsistent with that law or claim.   We decline to follow the Sixth Circuit's analysis in Van Camp.

Instead, we choose to adhere to our traditional mode of analysis, as prescribed in ERISA § 514(a): a law or claim is preempted when it relates to an ERISA plan, and not the reverse.[12]

---

[12]Our colleague in dissent disagrees with our analytical framework because we focus solely on the negligence claim and not the fact that it squarely conflicts with a provision in MMC's plan. Again, we point out that § 514(a) requires us to do as we have done.  We do not dispute our colleague's contention that Hook wants to have her cake and eat it, too.  But we are not assigned the role of spoiler.  A state court may perform that function upon remand if that court is persuaded, as our colleague asserts, that the waiver is enforceable under Texas law.

The Supreme Court cautioned that our ERISA preemption analysis "must be guided by respect for the separate spheres of governmental authority preserved in our federalist system." Alessi, 451 U.S. at 522. If we were to conclude that ERISA vests employers with the type of authority MMC contemplates, we would be disregarding the Supreme Court's cautionary advice in Alessi, because the practical implications of such a conclusion are serious. If an employer, for example, crafts an ERISA plan that conditions eligibility on employees waiving their right to sue the employer for gross negligence or intentional torts and an employee subsequently sues the employer for assault and battery, the employee's suit would be preempted, even though the suit has nothing to do with the ERISA plan. Congress' quest for uniform regulation of employee benefit plans could not have included the intent to permit employers to disable the states from prosecuting unrelated common law causes of action such as the assault claim in this hypothetical or Hook's claim, which is based on Texas common law dating back to the last century. See International & Great R.R. Co. v. Doyle, 49 Tex. 190 (1878).

As we stated in Memorial Hospital, "`[a] preemption provision designed to prevent state interference with federal control of ERISA plans does not require the creation of a fully insulated legal world that excludes these plans from regulation of any purely local transaction.'" Memorial Hosp., 904 F.2d at 250 (quoting Rebaldo v. Cuomo, 749 F.2d 133, 138 (2d Cir. 1984)). In other words, ERISA was not meant to consume everything in its path. In

21

Shaw, the Supreme Court "express[ed] no views about where it would be appropriate to draw the line" between those claims that are too tenuous or remote to warrant preemption and those that are not. Shaw, 463 U.S. at 100 n.21. In this case, we draw the line here: a common law negligence claim which alleges only that an employer failed to maintain a safe workplace does not "relate to" an ERISA plan merely because the employer has inserted a waiver of the right to bring such a claim into its ERISA plan.[13]

D.

Having concluded that the district court properly determined that ERISA does not preempt Hook's negligence cause of action against MMC, we now turn to the district court's discretionary decision to remand the case to state court. Given that we accord district courts significant deference when reviewing their decisions for abuse of discretion, Thomas v. Capital Sec. Servs., Inc., 836 F.2d 866, 883-84 (5th Cir. 1988) (en banc), we find no reason to disturb the court's decision to remand Hook's suit to state court.

IV.

We hold that Hook's common law negligence suit against MMC, which alleges only that MMC maintained an unsafe workplace, does not relate to MMC's ERISA plan and therefore is not preempted by

_____

[13]Our holding is consistent with the holding the United States recommends in its amicus brief. The brief, it should be pointed out, was authored by the Department of Labor, the federal agency charged with primary jurisdiction over enforcing employee benefit rights.

22

ERISA.  We AFFIRM the district court's decision to remand this case to district court.

No. 93-4115 -- <u>Hook v. The Morrison Milling Co.</u>

EDITH H. JONES, Dissenting:

With due respect to my colleagues, I disagree with their conclusion that Ms. Hook's negligence claim against her employer Morrison Milling Co. was not preempted by her participation in the employer's ERISA benefits plan.  I therefore dissent.

Texas is among a handful of states that do not require its employers to furnish state-mandated worker's compensation coverage.  Morrison Milling availed itself of the privilege of being a nonsubscriber, but it also sought to compensate its employees for their on-the-job injuries.  To do so, the company established an ERISA welfare benefits plan and permitted, but did not require, employees to enroll in that plan.  Under the plan, they would receive benefits for on-the-job injuries comparable to or better than those under the state program simply by proving that an on-the-job injury occurred.  In exchange for the certainty and promptness of payment of benefits, however, the employees were asked to sign a waiver of right to sue the employer under the Texas Workers' Compensation Act.[14]

Hook liked the plan's provision for benefits, which she collected after falling down a staircase at work.  She did not like the waiver of right to sue, however, so she also filed suit against Morrison Milling for negligence.

---

[14]     Under Texas law, an employee may sue a nonsubscriber to state workers compensation and his employer may not take advantage of common law defenses.

This sequence of events should make it obvious why the majority is wrong in concluding that Hook's lawsuit does not "relate to" an ERISA plan for purposes of federal preemption. If all of Morrison's employees tried to have their cake and eat it by collecting benefits and then suing Morrison Milling, Morrison Milling could not afford the luxury of providing its welfare benefit plan. The plan is a substitute for, not a vehicle to finance employee litigation.

Not only is the waiver of right to sue economically essential to Morrison Milling's plan, but Hook's claim legally "relates to" the plan by challenging the enforceability of that waiver. I cannot follow the majority's assertions to the contrary. First, the majority states that, <u>taken</u> <u>alone</u>, Hook's claim against her employer based on an unsafe workplace would not be preempted. This might well be true in the absence of a waiver. The majority then opines that even considering the waiver, the question is not whether Hook's claim "is preempted because the waiver, as a part of the plan, relates to Hook's claim. Instead, the appropriate question . . . is whether the claim or law relates to an ERISA plan." Apparently, one should focus only on the negligence claim, ignoring that it squarely conflicts with a provision of this ERISA plan. This logic is rather like a borrower's accepting money under a promissory note and asking the court to ignore its reference to a security agreement.

Without parsing the majority's analysis further, I think they have simply overlooked the breadth of the ERISA preemption

25

doctrine, and in particular, the significance of the Supreme Court's holding in <u>FMC Corp. v. Holliday</u>, 498 U.S. 52, 111 S. Ct. 403 (1990). The Court held in <u>FMC</u> that a subrogation clause by which an employee agreed to reimburse the ERISA plan for benefits paid if the employee recovered on a claim in a liability action against a third party preempted Pennsylvania's Motor Vehicle Financial Responsibility Law. That state law purported to override any right of subrogation of a tort recovery in a motor vehicle accident. 111 S. Ct. at 406. The Supreme Court reasoned that the anti-subrogation law had a "connection to" the ERISA plan because it "prohibits plans from being structured in a manner requiring reimbursement in the event of recovery from a third party." <u>Id</u>. at 408. Neither the amici nor the majority have in my view successfully distinguished <u>FMC Corp.</u> from this case. In <u>FMC Corp.</u>, the injured ERISA beneficiary surrendered his right to sue free of subrogation rights to the ERISA plan, whereas in this case, the injured party has ostensibly surrendered her right to sue for work-related injuries. None of the cases cited by the majority concerning the nature or extent of an "ERISA relationship" for purposes of preemption analysis is relevant here; Hook's claim directly draws into question the enforceability of the plan's waiver of right to sue.

Like the majority, I reach this conclusion without having expressly to decide whether the waiver of right to sue would be

enforceable, although I have concluded that if Texas law governs this question, it ought to be enforceable.[15]

Moreover, I am not particularly pleased to reach the conclusion that these matters are preempted by federal law. ERISA contains an explicit exemption for welfare benefit plans that are maintained to comply with state workers' compensation laws, and, as noted above, ERISA leaves unaffected the mandatory compensation schemes of nearly all the states. Had the ERISA statute been drafted differently, it might easily have excluded the plans promulgated by non-subscribers to Texas' compensation scheme. There are strong policy reasons for preferring state regulation of on-the-job injury claims to the indirect regulation that is accomplished through federal monitoring of ERISA plans. Finally, to hold that claims such as Hook's are preempted by the terms of this ERISA plan is to impose a heavy burden on federal courts.

---

[15] Both federal and state cases have held that a nonsubscriber may require a release from an employee as a condition of receiving insurance benefits. Collier v. Allstate Ins. Co., 395 F.2d 719 (5th Cir. 1968); Tigrett v. Heritage Bldg. Co., 533 S.W.2d 65 (Tex. Civ. App.--Texarkana 1976 writ ref'd n.r.e); Employers Mutual Casualty Co. v. Poorman, 428 S.W.2d 698 (Tex. Civ. App.--San Antonio 1968, writ ref'd n.r.e.); United States Fidelity & Guaranty Co. v. Valdez, 390 S.W.2d 485 (Tex. Civ. App.--Houston 1965, writ ref'd n.r.e.). One Texas case cites these authorities and then holds that a waiver is "against public policy" unless it expressly precluded the employer's reliance on common law defenses. Hazelwood v. Mandrell Industries, Inc., 596 S.W.2d 204, 206 (Tex. Civ. App.--Houston 1980). Because the coverage in Hazelwood required proof of negligence, whereas this plan does not, Hazelwood is distinguishable.

More recently, the Beaumont Court of Appeals held that a waiver of the right to sue the employer for negligence, contained in an ERISA benefits plan offered by a nonsubscriber to Texas workers compensation, was void and against public policy. Texas Health Enterprises, Inc. v. Kirkgard, 882 S.W.2d 630 (Tex. App.--Beaumont 1994). Even if this decision is correct, in light of the above-cited authorities, the case is distinguishable from the one before us. First, the waiver in that case was involuntary, whereas participation in Morrison Milling's ERISA plan is voluntary. Second, unlike Ms. Hook, appellees in that case did not seek benefits under the employer's plan.

27

But despite my unease with this conclusion, I cannot overlook the breadth of ERISA preemption and the applicability of <u>FMC Corp. v. Holliday</u> in this case.

I respectfully dissent.