Opinion issued January 11, 2007

 














In The

Court of Appeals

For The

First District of Texas






NO. 01-05-00473-CV

____________


MATTIE STILES, Appellant


V.


MEMORIAL HERMANN HEALTHCARE SYSTEM, Appellee






On Appeal from County Civil Court at Law No. 4

Harris County, Texas

Trial Court Cause No. 786269






OPINION ON REHEARING

 We grant appellee's motion for rehearing. Tex. R. App. P. 49.3. We vacate our
June 15, 2006 judgment, withdraw our June 15, 2006 opinion, and substitute this
opinion in its place.

 Appellant, Mattie Stiles, challenges the trial court's order dismissing her breach
of contract and fraud suit against appellee, Memorial Hermann Healthcare System
("Memorial"). In her sole issue, Stiles contends that the trial court erred in
concluding that it had no subject matter jurisdiction over her claims. 

 We reverse and remand for proceedings consistent with this opinion.

Factual and Procedural Background

 Stiles's action arose out of an injury that she sustained on January 4, 2002,
while working at Memorial. Stiles asserts that Memorial agreed to pay her health
care expenses related to the incident in consideration of Stiles's releasing Memorial
from liability for any negligence on its part. Stiles attached an unsigned "Release of
Claims and Covenant not to Sue" to her second amended petition evidencing such an
agreement. The release referenced Memorial's Occupational Health Plan (the "Plan")
and stated that notwithstanding Stiles's release of her claims against Memorial, Stiles
retained her rights to benefits under the Plan. Stiles alleges that Memorial refused to
pay her medical bills pursuant to the release. 

 Memorial answered Stiles's suit with a general denial and argued, among other
things, that the trial court lacked subject matter jurisdiction to hear Stiles's claims. 
Memorial then filed a notice of removal, asserting that Stiles's petition stated an
action to recover benefits under the Plan, which qualified under the Employee
Retirement Income Security Act of 1974 ("ERISA"), (1) thereby triggering complete
preemption under ERISA's civil enforcement provisions. (2) The case was removed to
the United States District Court of the Southern District of Texas. In Stiles's
subsequent motion to remand, she contended that it was Memorial's breach and fraud
related to the release agreement, distinct from any rights that she held under the Plan,
that formed the basis of her lawsuit. The United States District Court remanded the
case back to the trial court for lack of federal jurisdiction, stating that "substantial
doubt remains as to whether [Stiles's] claim does in fact fall within the preemptive
scope of ERISA." 

 Upon remand, Memorial moved to dismiss the lawsuit, again arguing a lack of
subject matter jurisdiction based on ERISA preemption. The trial court granted the
motion to dismiss, concluding that Stiles's state law claims for breach of contract and
fraud were "addressed by" and "related to" the Plan, that ERISA "completely
preempted" Stiles's state law claims, and that it had no subject matter jurisdiction
over the claims. Standard of Review 

 Subject matter jurisdiction is a question of law, to which we apply a de novo
standard of review. Mayhew v. Town of Sunnyvale, 964 S.W.2d 922, 928 (Tex.
1998). A claim of federal preemption is a challenge to a state court's subject matter
jurisdiction and cannot be waived. See Int'l Longshoremen's Ass'n v. Davis, 476
U.S. 380, 392, 106 S. Ct. 1904, 1913 (1986). When courts speak of "preemption of
jurisdiction," they are not referring to the applicability of federal law; rather, they
refer to Congress's ability to require resolution of certain claims exclusively in a
federal forum. Mills v. Warner Lambert Co., 157 S.W.3d 424, 427 (Tex. 2005). "In
any doubtful case all intendments of the plaintiff's pleading will be in favor of the
jurisdiction." Peek v. Equip. Serv. Co. of San Antonio, 779 S.W.2d 802, 804 (Tex.
1989). 

 A trial court's findings of fact have the same weight as a jury's verdict upon
special issues and are reviewable for sufficiency of the evidence to support them. 
Amador v. Berrospe, 961 S.W.2d 205, 207 (Tex. App.--Houston [1st Dist.] 1996,
writ denied). A trial court's conclusions of law are reviewed de novo. Material
P'ships, Inc. v. Ventura, 102 S.W.3d 252, 257 (Tex. App.--Houston [14th Dist.]
2003, pet. denied). ERISA Preemption

 Congress enacted ERISA as a comprehensive system to regulate employee
benefit plans "to promote the interests of employees and their beneficiaries in
employee benefit plans . . . [and] to protect contractually defined benefits." Firestone
Tire & Rubber Co. v. Bruch, 489 U.S. 101, 113, 109 S. Ct. 948, 956 (1989). The act
regulates both pension plans and welfare plans that provide benefits for contingencies
such as illness, accident, disability, death, or unemployment. Cathey v. Metro. Life
Ins. Co., 805 S.W.2d 387, 388 (Tex. 1991). While it provides standards and rules
governing reporting, disclosure, and fiduciary responsibility for pension and welfare
plans, ERISA does not mandate any particular benefits. Shaw v. Delta Air Lines, Inc.,
463 U.S. 85, 90-91, 103 S. Ct. 2890, 2896-97 (1983). 

 ERISA includes expansive preemption provisions, which are intended to ensure
that employee benefit plan regulation would be "exclusively a federal concern." 
Alessi v. Raybestos-Manhattan, Inc., 451 U.S. 504, 523, 101 S. Ct. 1895, 1906
(1981). To this end, ERISA "shall supercede any and all state laws insofar as they
may now or hereafter relate to any employee benefit plan." Employee Retirement
Income Security Act of 1974, 29 U.S.C. § 1144(a) (2005). ERISA preemption applies
not only to state laws but to all forms of state action dealing with the subject matters
covered by the statute. 29 U.S.C. § 1144(c)(1); see also Shaw, 463 U.S. at 98, 103
S. Ct. at 2900. Accordingly, when a state court suit, alleged in terms of a state
common-law or statutory cause of action, relates to an employee welfare benefit plan,
ERISA may preempt the state law in favor of federal law. Metro. Life Ins. Co. v.
Taylor, 481 U.S. 58, 63-66, 107 S. Ct. 1542, 1546-48 (1987); Gorman v. Life Ins.
Co. of N. Am., 811 S.W.2d 542, 545 (Tex. 1991).

 The ERISA preemptive provision is to be broadly construed. See Aetna Health
Inc. v. Davila, 542 U.S. 200, 217, 124 S. Ct. 2488, 2500 (2004) (stating that Court's
understanding of ERISA's preemptive effect is informed by "overpowering federal
policy" embodied in ERISA's civil enforcement provision, which was intended to
create "an exclusive federal remedy"). However, the Supreme Court has cautioned
that "[s]ome state actions may affect employee benefit plans in too tenuous, remote,
or peripheral a manner to warrant a finding that the law 'relates to' the plan." Shaw,
463 U.S. at 100 n.21, 103 S. Ct. at 2901 n.21. To determine whether a state law claim
has the forbidden connection to ERISA, we look to both the objectives of ERISA and
the effect of the asserted state law on ERISA plans. Egelhoff v. Egelhoff, 532 U.S.
141, 147, 121 S. Ct. 1322, 1327 (2001). Because the scheme is deemed to be
comprehensive with regard to the remedies provided and excluded, any state law
cause of action that duplicates, supplements, or supplants the ERISA civil
enforcement remedy conflicts with the Congressional intent to make the ERISA
remedy exclusive and is preempted. See Davila, 542 U.S. at 209, 124 S. Ct. at 2495. 
The Fifth Circuit Court of Appeals has propounded a two-pronged test wherein
ERISA preempts a state law claim if "(1) the state law claim addresses an area of
exclusive federal concern, such as the right to receive benefits under the terms of an
ERISA plan; and (2) the claim directly affects the relationship between the traditional
ERISA entities--the employer [in its role as administrator], the plan and its
fiduciaries, and the participants and beneficiaries." Hubbard v. Blue Cross & Blue
Shield Ass'n, 42 F.3d 942, 945 (5th Cir. 1995). 

 ERISA also contains express jurisdictional provisions. Section 502(a)(1)(B)
provides that state courts of competent jurisdiction and district courts of the United
States have concurrent jurisdiction of actions by a beneficiary: (1) to recover benefits
due under the terms of a plan; (2) to enforce rights under a plan; or (3) to clarify
rights to future benefits. 29 U.S.C. § 1132(a), (e). However, state law claims seeking
relief within the scope of § 502(a)(1)(B) are completely preempted. (3) In instances of
complete preemption, a state law claim may be re-characterized as an action to
recover benefits under ERISA, thus giving a state court jurisdiction, although the
claim may be subject to removal. Arana v. Ochsner Health Plan, 338 F.3d 433, 439
(5th Cir. 2003).

 Outside the actions contemplated by section 502(a)(1)(B), any other ERISA
civil action is within the exclusive jurisdiction of the federal courts. See 29 U.S.C.
§ 1132(e)(1). That is, if a claim relates to an employee benefit plan governed by
ERISA but it is not a claim for benefits due under the policy or a suit to enforce or
clarify rights under the policy, it falls within the exclusive jurisdiction of the federal
courts. (4) Accordingly, for state law claims that do not fall within the scope of 29
U.S.C. 1132(a)(1)(B) and (e)(1), an assertion of ERISA preemption is, if successful,
jurisdictional. Saks v. Franklin Covey Co., 316 F.3d 337, 349-50 (2d Cir. 2003). In
those cases, preemption is not waivable. Id.

 Despite ERISA's expansive scope, if a state law claim does not seek to recover
or replace benefits under an employee welfare benefit plan and is based on a violation
of a legal duty independent of ERISA, it is not preempted by ERISA. Haynes v.
Haynes, 178 S.W.3d 350, 354 (Tex. App.--Houston [14 Dist.] 2005, pet. denied); see
also Davila, 542 U.S. at 210; 124 S. Ct. at 2496. Necessarily, state law claims based
on the violation of a legal duty independent of ERISA would not "relate to" ERISA
so as to implicate preemption or federal jurisdiction. In such a case, absent diversity,
and with no other basis for "arising under" jurisdiction, it is the federal court that
would be deprived of subject matter jurisdiction to hear the cause. See, e.g., Peacock
v. Thomas, 516 U.S. 349, 352, 116 S. Ct. 862, 865-66 (1996) (holding veil-piercing
claim does not state cause of action under ERISA and cannot independently support
federal subject matter jurisdiction); Hook v. Morrison Milling Co., 38 F.3d 776,
785-86 (5th Cir. 1994) (affirming remand of common law negligence suit after
finding claim did not relate to and therefore was not preempted by ERISA). 
Accordingly, we must determine what, if any, preemptive effect ERISA has in the
instant case and the resulting effect on subject matter jurisdiction.

 In its original briefing, Memorial argues that "the trial court properly dismissed
this case, because Stiles's state law claims were completely preempted by federal
law." Stiles, in her briefing, essentially argues that the trial court should have
exercised concurrent jurisdiction over her claims.

 As noted above, even if Memorial is correct that ERISA preempts Stiles's state
law claims, it does not necessarily follow that the trial court lacked jurisdiction over
the claims. Federal preemption is distinguished from exclusive federal jurisdiction,
because "[i]n the former, federal substantive law supplants state law but absent other
provisions both state and federal courts have concurrent jurisdiction of actions arising
under that law; in the latter, only the specified federal instrumentalities have
jurisdiction of the matter, irrespective of the law to be applied." Chappell v. SCA
Servs., Inc., 540 F. Supp. 1087, 1095 (D. Ill. 1982). Therefore, although federal
preemption is often a federal defense to the plaintiff's suit, it does not ordinarily
deprive a state court of jurisdiction. Taylor, 481 U.S. at 63, 107 S. Ct. at 1546. 
"There are thus some cases in which a state law cause of action is preempted, but only
a state court has jurisdiction to so rule." Romney v. Lin, 105 F.3d 806, 813 (2d Cir.
1997). 

 ERISA provides that state courts of competent jurisdiction and district courts
of the United States have concurrent jurisdiction of actions under section 502(a) to
(1) recover plan benefits, (2) enforce plan rights, or (3) clarify rights to future
benefits. 29 U.S.C. § 1132(a)(1)(B); Gorman, 811 S.W.2d at 545. Also as noted,
a beneficiary's state law claim that "relates to" an ERISA plan but does not fall into
one of the three foregoing categories under 29 U.S.C. § 1132(a)(1)(B) is within the
exclusive jurisdiction of the federal courts, and the resulting ERISA preemption
deprives a state court of jurisdiction over the claim. Gorman, 811 S.W.2d at 547-49;
see also Southland Life Ins. Co. v. Estate of Small, 806 S.W.2d 800, 801 (Tex. 1991). 
In its original briefing, Memorial argues that Stiles's claims fall within this latter
category because her claims are related to an ERISA-qualifying plan but "did not seek
plan benefits . . . [but] sought something extra - all medical expenses, whether
consistent with plan benefits or not." Thus, Memorial asserts that "[the trial court]
was correct to dismiss [Stiles's] claim as being completely preempted by ERISA."

 In our original opinion, we stated that "Stiles's petition neither seeks benefits
under the Plan, nor claims that Memorial improperly processed her claim for
benefits." We held that the release "does not qualify Memorial's promise regarding
'payment and future payment of [Stiles's] medical bills,'" and that "[t]he release
expressly demonstrates Memorial's promise to pay Stiles's medical bills independent
of the Plan." 

 In its motion for rehearing, Memorial contends that this Court erred in holding
that Memorial promised to pay Stiles's medical bills independent of the benefits plan
offered by Memorial, in finding that no aspect of ERISA preemption applied to
Stiles's claims, and in not finding that Stiles's claims were "completely preempted"
by ERISA and that Stiles's claims should have been remanded to the trial court to be
considered as a claim for benefits under ERISA.

 It must first be noted that Memorial's arguments on rehearing are distinct from
the arguments it made in its original briefing. In its original briefing, Memorial
argued that because Stiles sought a remedy to which she was not entitled, her claims
were "completely preempted" and, as a result, the trial court "lacked subject matter
jurisdiction." Memorial now concedes on rehearing that the trial court did not lack
jurisdiction and asserts, for the first time, that "the correct outcome in this appeal is
a remand to the trial court for adjudication of Stiles's state law complaints re-characterized as claims for benefits under 29 U.S.C. § 1132(a)." 

 Memorial's main complaint on rehearing concerns this Court's conclusion that
Memorial promised to pay Stiles's bills "independent of the Plan." Memorial asserts
that this conclusion "expands Memorial's potential exposure." Memorial states that
this Court failed to realize that the release was "an integral component of the Plan"
and that "under the Release, the payment of healthcare expenses for Stiles was
contemplated by the parties through the Plan." Memorial asserts that "[t]he dramatic
expansion of Memorial's potential exposure . . . undermines the most basic
protections afforded to Plan Sponsors and Plan Administrators under ERISA." 

 We begin our analysis of Memorial's arguments, now clarified on rehearing,
by considering the language of the Release, which provides:

In consideration for the payment and future payment of my medical bills
and other benefits provided by Memorial, which payment(s) relate to my
work-related Incident, . . . I . . . unconditionally release, hold harmless
and forever discharge [Memorial] . . . from any and all demands, causes
of action, suits, claims, charges, liabilities, damages, costs, and expenses
. . . arising out of any and all known and unknown personal injuries and
property damage resulting or to result from the incident . . . excepting
only any claims for benefits that I may have under the terms and
conditions of the [Plan]. I understand that any claim I may have for
benefits under the Plan is not affected by this Release.


 I understand and agree that my signature on this [Release] will
forever prevent me . . . from filing a lawsuit . . . for damages,
compensation, and any other relief with respect to any claims that relate
to Incident, except for any benefits claims under the Plan. . . . [T]his
Release specifically covers and releases any claims directly or indirectly
resulting from any negligence on the part of [Memorial].


 I hereby promise that neither I nor any other Releasor will file . . .
any negligence cause of action, . . ., or any other type of action or claim,
against [Memorial] . . . which relates to the Incident or the actions of
[Memorial] arising therefrom, expect [sic] I reserve my right to file
claims for benefits under the Plan. 


(Emphasis in original.)

 Memorial asserts that this release "contains no independent promise" to pay
Stiles's medical bills, "but simply a reference to the consideration to be provided by
Memorial, consideration which is to be provided by and through the Plan." Memorial
asserts that this Court has rewritten the terms of the release by ignoring the numerous
references to the Plan in the release. 

 Contrary to Memorial's assertions, the release does not "provide[] that in return
for Stiles's release of Memorial, she can participate in the benefits provided by the
Plan." (5) If, in fact, the release said what Memorial represents, we might agree with
Memorial's argument, which again, was presented for the first time on rehearing. 
However, as we noted in our original opinion, Stiles, through her claims for breach
of contract and fraud, seeks damages for Memorial's alleged failure to honor the
terms of the release, which expressly required Stiles to disclaim her right to sue
Memorial for any actions arising out of the incident "in consideration for payment
and future payment of [her] medical bills and other benefits." Although the Plan is
referenced throughout the release, the release refers specifically to the Plan only to
make clear that any claim for Plan benefits is excluded from the scope of the release. 
 Although the release indicates that any claim to Plan benefits survives the
execution of the release, there is no indication that, by executing the release, Stiles
was only entitled to the payment of her medical bills if such payment is consistent
with the benefits offered under the terms of her Plan. Memorial certainly could have
accomplished its desired goal by drafting a different release. For example, the release
could have expressly required that Stiles was required to execute the release, pursuant
to the terms of the Plan, in order for her to be entitled to receive her benefits, which
may have included the payment of her medical bills in accordance with the terms of
the Plan. Instead, Stiles signed a release forgoing her right to sue Memorial in
exchange for Memorial's unqualified promise to pay her medical bills relating to her
"work-related Incident." Simply put, pursuant to the unambiguous terms of the
release, Stiles is entitled to the payment and future payment of her medical bills
relating to her "work-related Incident," regardless of whatever benefits are offered
under the terms of the Plan. There is no indication in the release that she is entitled
to the payment of medical bills only to the extent such payment is consistent with the
benefits offered under the terms of the Plan. As Stiles acknowledged in signing the
release, any claim to benefits under the Plan "is not affected by this Release." Even
Memorial recognizes, in its original brief, that "[Stiles] did not seek plan benefits"
and instead "sought something extra-all medical expenses, whether consistent with
plan benefits or not." Memorial makes the point: Stiles seeks this remedy, i.e.
"something extra," because, if executed, that is what the release promises.

 Memorial urges this Court to consider the Plan in interpreting the release,
citing "the generally accepted principles of contract interpretation, that all writings
that pertain to the same transaction will be considered together." See DeWitt County
Elec. Coop., Inc. v. Parks, 1 S.W.3d 96, 102 (Tex. 1999). We agree that we should
consider the Plan in interpreting the release. The Plan states, in relevant part:

 As a condition of the Plan, . . . the Plan Administrator reserves the right
to require any Employee who incurs a Bodily Injury . . . to execute and
deliver to the Plan Administrator, on a form provided by the Plan
Administrator, a full release of liability and covenant not to sue (except
with respect to Benefits claims under the Plan), before Benefits are
awarded under the Plan or at any other time in consideration for the
award of any Benefits. 

 The Plan contemplates the execution of a release that informs an employee that
she is being required to execute the release, as set forth by the terms of the Plan, in
order to be entitled to receive the payment of her medical bills pursuant to the terms
of the Plan. This is the type of release that Memorial describes in its motion for
rehearing; however, it is not the type of release attached to Stiles's petition. Again,
instead, Stiles gave up her right to sue in exchange for Memorial's unqualified
promise to pay her medical bills, not merely a promise to furnish her benefits in
accordance with the terms of the Plan. 

 In its original briefing, Memorial asserts that Stiles's state law claims were
completely preempted and "the trial court's decision properly followed Copling v.
The Container Store, 174 F.3d 590, 597-99 (5th Cir. 1999)." Copling, however, is
inapplicable. It involved an appeal from a remand order for a breach of contract suit
related to an ERISA plan. Id. at 594-95. Although the court was precluded from
reviewing the remand order, Justice Wiener, in concurrence, noted that "counsel for
Copling so grossly mischaracterized his client's cause of action as a state breach of
contract claim as to approach frivolousness" and that Copling himself had
characterized the claim as one for "misrepresentation of the terms of the Plan." Id.
at 597-98. Justice Wiener then encouraged the state court to which the case was
remanded to recognize the complete preemption issue that "lurks in the record of this
case." Id. at 599. Here, Stiles's suit is not one to recover benefits, enforce rights
under the plan, or clarify rights to future benefits, and thus, her claims are not
completely preempted by ERISA's civil enforcement provisions. See 29 U.S.C.
§ 1132(a)(1)(B); Taylor, 481 U.S. at 66, 107 S. Ct. at 1547-48. Moreover, Stiles's
claims arise out of the release agreement and do not concern the terms of the Plan. 
 Other federal cases are more on point and provide guidance. In Westbrook v.
Beverly Enterprises, a non-subscribing employer offered an ERISA plan that
provided medical benefits for work-related injuries. 832 F. Supp. 188, 189 (W.D.
Tex. 1993). The plan in Westbrook also contained a "waiver-of-right-to-sue" clause,
whereby the employee waived his right to sue for work-related injuries in exchange
for medical benefits. Id. In rejecting the employer's preemption claim, the court
concluded that neither the cause of action (an unsafe workplace action) nor the waiver
related to the ERISA plan because both involved only the employee-employer
relationship and not the administrator-beneficiary relationship. Id. at 189-92.

 Similarly, in Hook, the court held that Hook's unsafe workplace claim was
"totally independent from the existence and administration of" the ERISA plan. 38
F.3d at 784. The claim for negligent misrepresentation was not preempted "because
it neither sought benefits under the plan nor alleged improper processing of benefits." 
Id. A few months after the decision in Hook, the court again held that an employee's
common law occupational injury claim did not relate to an employer's ERISA plan. 
Tex. Health Enters., Inc. v. Reece, 44 F.3d 243, 245 (5th Cir. 1994).

 In Smith v. Texas Children's Hospital, the court held that preemption did not
apply to a plaintiff's fraudulent inducement claim because the claim was not
necessarily dependent upon the plaintiff's rights under the ERISA plan. 84 F.3d 152,
155 (5th Cir. 1996). The plaintiff alleged that she relinquished her accrued benefits
with her previous employer in reliance upon Texas Children's alleged
misrepresentations. Id. at 153. Because her claim was not based solely on Texas
Children's denial of benefits, the court concluded that she could have a claim based
on the benefits she lost as a result of being induced to leave her former employer. Id.
at 154-55.

 This Court, in Keifer v. Spring Shadows Glen, followed Hook and reversed a
summary judgment in favor of a non-subscriber employer and held that a common
law negligence suit against an employer does not "relate to" the employer's ERISA
plan. 934 S.W.2d 785, 787-88. (Tex. App.--Houston [1st Dist.] 1996, writ denied);
see also Mem'l Hosp. Sys. v. Northbrook Life Ins. Co., 904 F.2d 236, 243-50 (5th Cir.
1990) (holding negligent misrepresentation claim was not preempted because it
neither sought benefits under plan nor alleged improper processing of benefits);
Perkins v. Time Ins. Co., 898 F.2d 470, 473 (5th Cir. 1990) (holding claim that
insurance agent fraudulently induced insured to surrender coverage under existing
policy to participate in ERISA plan which did not provide promised coverage
'relate[d] to' that plan only indirectly); Nunez v. Wyatt Cafeterias, Inc., 771 F. Supp.
165, 169 (N.D. Tex. 1991) ("The fact that plaintiff's recovery in this action could be
reduced by virtue of payments received by plaintiff under the plan provides, at most,
an indirect economic impact between the two."). 

 Although "ERISA's preemptive scope may be broad, . . . it does not reach
claims that do not involve the administration of plans, even though the plan may be
a party to the suit or the claim relies on the details of the plan." Hook, 38 F.3d at 784. 
Here, the release reflects that Stiles bargained for a distinct and independent promise
from Memorial to pay her medical bills in consideration of her release of any claims
against Memorial arising from the incident. We conclude that the underlying conduct
complained about in this case, breach of contract and fraud, can be "divorced from
its connection to the employee benefit plan." (6) Hook, 38 F.3d at 783 (quoting
Christopher v. Mobil Oil Corp., 950 F.2d 1209, 1220 (5th Cir. 1992)); see also
Rokohl v. Texaco, Inc., 77 F.3d 126, 129 (5th Cir. 1996). Moreover, we note that
Stiles's state law claims, as pleaded, do not address areas of exclusive federal concern
as she is not seeking the right to receive benefits under the terms of an ERISA plan,
nor do her claims directly affect the relationship among the traditional ERISA
entities. See Mem'l Hosp. Sys., 904 F.2d at 245. 

 We hold that Stiles's claims based on the breach of the release agreement do
not "relate to" Memorial's ERISA-qualifying Plan. Accordingly, we further hold that
the trial court erred in dismissing Stiles's causes of action for lack of subject matter
jurisdiction.

 We sustain Stiles's sole issue. 

 Conclusion

 We reverse the order of the trial court and remand for further proceedings
consistent with this opinion. 




 



 Terry Jennings 


 Justice



Panel consists of Chief Justice Radack and Justices Jennings and Alcala.


Chief Justice Radack, concurring in the judgment only.


1. Employee Retirement Income Security Act of 1974 ("ERISA"), Pub. L. No. 93-406,
88 Stat. 829 (1974) (codified as amended at 29 U.S.C. §§ 1001-1461 (2005)).
2. See 29 U.S.C. § 1132(a)(1)(B). 
3. In contrast to ordinary or conflict preemption under section 514(a), complete
preemption not only displaces substantive state law, but also "recharacterizes"
preempted state law claims as "arising under" federal law for the purposes of
determining federal question jurisdiction, typically making removal available to the
defendant. Metro. Life Ins. Co. v. Taylor, 481 U.S. 58, 64-65, 107 S. Ct. 1542,
1546-47 (1987). Although both parties address this distinction, we note that
"complete preemption" is less a principle of substantive preemption than it is a rule
of federal jurisdiction. Id. Since, with either "ordinary" or "complete" preemption,
a state court may retain concurrent jurisdiction over a claim, the distinction is not
particularly relevant to the issue in this case. It is section 1132(e)(1) which specifies
when there is exclusive federal jurisdiction. See 29 U.S.C. § 1132(e)(1).
4. We note that the exercise of exclusive federal jurisdiction derives from the
forum-preempting language of section 502(a), rather than the existence of a
preemption defense. See 29 U.S.C. § 1132(e)(1) ("the district courts of the United
States shall have exclusive jurisdiction of civil actions under this subchapter . . . .");
Mills v. Warner Lambert Co., 157 S.W.3d 424, 427 (Tex. 2005). 
5. Memorial, citing Pratt-Shaw v. Pilgrim's Pride Corp., 122 S.W.3d 825, 827-28 (Tex.
App.--Dallas 2003, pet. denied), asserts that it is a "common arrangement" for a
release to provide that in return for an employee's release of an employer, the
employee can participate in plan benefits. In Pratt-Shaw, Pratt died as a result of
injuries he sustained while at work. Pratt's employer offered its employees voluntary
participation in a benefit plan. Id. After his death, "Pratt's medical expenses and an
accidental death benefit were paid in accordance with the Plan's terms." Id. at 828. 
Pratt's survivors brought suit against the premises owner of the job site where Pratt
was injured. Id. The premises owner argued that the claims were barred by the release
language contained in the "agreement to participate in the Plan," which Pratt signed
before his death. Id. This agreement stated, "You may have certain rights under the
common laws of Texas for damages arising out of work-related illness or injury. If,
however, you choose to participate in the [Plan] by requesting the benefits provided
in the Plan, you hereby agree to accept the Plan benefits as the only benefits you are
entitled to receive in the event of a work-related injury and to waive any and all other
causes of action . . ." Id. at 828 n.1. The court noted that this agreement disclosed to
the employee that "the employer offers the benefits of the Plan instead of the common
law rights." Id. at 828. Here, however, the release does not state that, by signing it,
Stiles is entitled only to benefits under the Plan. Rather, the release reflects that Stiles
is entitled to the payment and future payment of her medical bills relating to her
"work-related Incident."
6. We make no comment with respect to the merits of Stiles's claim. We conclude only,
that as pleaded, Stiles's petition states a cause of action to recover based on a promise
distinct and independent of the Plan.