United States Court of Appeals,

Fifth Circuit.

No. 95-40276.

Monroe R. ROKOHL, Plaintiff-Counter-Defendant-Appellant,

v.

TEXACO, INC., Defendant-Counter-Claimant-Appellee.

March 11, 1996.

Appeals from the United States District Court for the Southern District of Texas.

Before REYNALDO G. GARZA, WIENER and STEWART, Circuit Judges.

WIENER, Circuit Judge:

Plaintiff-Appellant Monroe R. Rokohl filed suit against his employer, Defendant-Appellee Texaco, Inc., alleging *inter alia* that Texaco wrongfully dismissed him because of his disability, in violation of the Texas Commission on Human Rights Act (TCHRA),[1] and that Texaco had discharged him to avoid paying him maximum retirement benefits, in violation of the Employee Retirement Income Security Act (ERISA).[2] The district court granted summary judgment in favor of Texaco on the TCHRA claim, reasoning that the claim was preempted by ERISA; and, after a one-day bench trial, the court

---

[1] When Rokohl filed his claim, the TCHRA was found at TEX.REV.CIV.STAT.ANN. art. 5221k. In 1993, the Texas legislature recodified the TCHRA as TEX.LAB.CODE ANN. §§ 21001-.262. The legislature also amended some of the provisions of the Act; however, those amendments apply only to complaints filed with the Commission on Human Rights on or after September 1, 1993. *See Austin State Hosp. v. Kitchen,* 903 S.W.2d 83, 87 n. 4 (Tex.App.1995).

[2] *See* 29 U.S.C.S. §§ 1001 et seq. (Law. Co-op 1990 & Supp.1995).

granted Texaco's motion for a directed verdict on Rokohl's ERISA claim. Rokohl appeals only from the grant of summary judgment on his TCHRA claim. Concluding that ERISA does not preempt Rokohl's TCHRA claim, we reverse the district court's grant of summary judgment dismissing that claim and remand for further proceedings in the district court consistent with this opinion.

## I.

### FACTS

The essentially undisputed facts, with all inferences presented in the light most favorable to Rokohl,[3] are as follows: From 1968 to 1990, Rokohl worked for Texaco as a roustabout, a position that primarily entails the maintenance and repair of field lines and equipment; and as a pumper, a position that primarily entails driving around oil fields from well to well gauging volumes of production and checking for mechanical problems with equipment. In 1969, Rokohl started to experience epileptic seizures, the frequency and severity of which increased over time. After Rokohl suffered a seizure while driving a company truck in 1986, a Texaco physician restricted him to performing tasks that did not involve driving, climbing, or working near open machinery. Texaco continued to employ Rokohl after his on-the-job seizure, although the parties dispute the precise capacity in which he served after the imposition of the medical restrictions.

---

[3]When reviewing a grant of summary judgment, we view the facts and inferences in the light most favorable to the non-moving party. *See Cavallini v. State Farm Mutual Auto Ins. Co.,* 44 F.3d 256, 266 (5th Cir.1995).

In 1988 and 1989, Texaco granted Rokohl any number of brief medical leaves of absence pursuant to the company's Short-Term Disability (STD) Plan. When Rokohl returned to work after one of these leaves, he suffered yet another seizure and had to be driven home by a co-worker. The following day, a Texaco executive instructed Rokohl not to return to work until he had received a complete medical release and was able to perform the full range of duties of a roustabout.

In November of 1989, Rokohl underwent epilepsy surgery. The surgery initially proved unsuccessful: Rokohl's seizures continued, and he began to experience psychiatric problems. In March of 1990, physicians treating Rokohl notified Texaco that he could resume employment on the condition that he continue to avoid driving, climbing, and operating hazardous machinery. Shortly thereafter, Rokohl reported to Texaco's field office and asked to be assigned to a roustabout crew. The Texaco supervisor on duty, observing that Rokohl was trembling and unable to carry on a coherent conversation, sent him home on sick leave. Texaco officials again informed Rokohl that he should not return to work until he was able to resume, without medical restrictions, the duties of a roustabout.

In July of 1990, when Rokohl's eligibility for benefits under the STD plan expired, Texaco's division manager recommended that Rokohl be approved for benefits under the company's Long-Term Disability Plan, an ERISA-qualified "employee welfare benefit

3

plan."[4]  Significant for our consideration today, under Texaco policy, the grant of LTD benefits constitutes a termination of employment with that company.

In response to the division manager's recommendation, Texaco's LTD plan administrator terminated Rokohl's employment upon finding him eligible under the provisions of the LTD plan.[5]  As a result, Rokohl was "granted" monthly LTD benefits, albeit without his having applied therefor, effective October of 1990.  Texaco forthrightly concedes that this action constitutes termination of employment.

## II.

## PROCEEDINGS

---

[4]It is undisputed that the LTD Plan is an "employee welfare benefit plan" within the meaning and coverage of ERISA.  *See* 29 U.S.C.S. § 1002(1) (Law.Co-op 1990) ("The terms "employee welfare benefit plan' and "welfare plan' mean any plan ... which ... is ... established or maintained by an employer ... to the extent that such plan ... is maintained for the purpose of providing ... benefits in the event of sickness, accident, [or] death....").

[5]The LTD Plan provides in relevant part:

> The LTD Plan will provide the amount needed to bring your total income, including "other income," up to 60% of your monthly base pay in effect at the time of your LTD separation.

> Benefits under the LTD Plan will be payable until the earlier of (1) age 65 (the earlier of age 70 or 60 months, if you become disabled at age 60 or later), (2) recovery from your disability, or (3) death.

> During the first 24 months, "disabled" means you are unable to perform the normal duties of your regular or comparable job assignment with the Company.  Thereafter, LTD benefits will continue only if you are unable to perform *any* job for which your are, or may become, qualified by training, education, or experience.

4

Shortly after Rokohl was thus discharged, he filed written complaints with the Texas Commission of Human Rights and the Equal Employment Opportunity Commission (the EEOC), alleging that Texaco had discriminated against him because of his disability. After exhausting all administrative remedies, Rokohl filed suit against Texaco in Texas state court, alleging *inter alia* that Texaco had (1) discharged him because of his disability, in violation of the TCHRA, and (2) dismissed him to avoid paying maximum retirement benefits, in violation of ERISA. The suit was removed to federal district court on diversity grounds in March of 1992.[6]

Approximately two years later, Texaco moved for summary judgment on all of Rokohl's claims. The district court denied the motion with regard to the ERISA claim, but granted summary judgment for Texaco on each of Rokohl's remaining claims—including the TCHRA claim, which the court held was preempted by ERISA. In February of 1995, a one-day bench trial was held on the ERISA claim.[7] After Rokohl had presented his case, Texaco moved for a directed verdict. The district court granted Texaco's motion and entered final judgment for Texaco. Rokohl timely appealed, challenging only the

---

[6]Federal question jurisdiction also exists over some of Rokohl's claims, as he stated claims under ERISA, 29 U.S.C.S. §§ 1001 et seq., and the Americans with Disability Act (ADA), 42 U.S.C.S. 12101 et seq. (Law.Co-op.Supp.1995). The district court granted summary judgment for Texaco on the ADA claim, concluding that Rokohl was discharged prior to the ADA's effective date. Rokohl does not challenge this determination on appeal.

[7]The bench trial was also held on a counterclaim filed by Texaco for an offset of the social security benefits received by Rokohl. The district court ultimately entered final judgment in favor of Texaco on this counterclaim. Rokohl does not appeal from the district court's adjudication of the counterclaim.

5

grant of summary judgment on his TCHRA claim.

## III.

## ANALYSIS

### A. STANDARD OF REVIEW

When reviewing a grant of summary judgment, we view the facts and inferences in the light most favorable to the non-moving party[8]; and we apply the same standards as those governing the lower court in its determination.[9] Summary judgment must be granted if a court determines "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[10]

### B. ERISA PREEMPTION

Section 514(a) of ERISA states that the statute "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" that is covered by ERISA.[11] Courts have interpreted this preemption clause broadly, observing that its deliberatively expansive language was designed "to establish pension plan regulation as exclusively a federal concern."[12]

---

[8]*See Cavallini,* 44 F.3d at 266.

[9]*See Neff v. American Dairy Queen Corp.,* 58 F.3d 1063, 1065 (5th Cir.1995), *cert. denied,* --- U.S. ----, 116 S.Ct. 704, 133 L.Ed.2d 660 (1996).

[10]FED.R.CIV.P. 56(c).

[11]*See* 29 U.S.C.S. § 1144(a) (Law.Co-op 1990).

[12]*Ingersoll-Rand Co. v. McClendon,* 498 U.S. 133, 138, 111 S.Ct. 478, 482, 112 L.Ed.2d 474 (1990) (internal quotations and citations omitted).

6

The Supreme Court has given the phrase "relate to" a "broad common-sense meaning."[13]  A state law relates to an ERISA plan "in the normal sense of the phrase if it has connection with or reference to such a plan."[14]  A state law can relate to an ERISA plan even if that law was not specifically designed to affect such plans, and even if its effect is only indirect.[15]  If a state law does not expressly concern employee benefit plans, it will still be preempted insofar as it applies to benefit plans in particular cases.[16]

Nevertheless, ERISA preemption is not without limits.  The Supreme Court has cautioned that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law "relates to' the plan."[17]  The ultimate question is whether, "if the appellant['s] claims were stripped of their link to the pension plans, they would cease to exist."[18]  We have held in this regard that ERISA does not preempt

---

[13]*Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 47, 107 S.Ct. 1549, 1553, 95 L.Ed.2d 39 (1987).

[14]*Shaw v. Delta Air Lines,* 463 U.S. 85, 96-97, 103 S.Ct. 2890, 2899-900, 77 L.Ed.2d 490 (1983).

[15]*See Rozzell v. Security Services, Inc.,* 38 F.3d 819, 821 (5th Cir.1994) (citing *Pilot Life,* 481 U.S. 41, 107 S.Ct. 1549).

[16]*See Sommers Drug Stores Co. Employee Profit Sharing Trust v. Corrigan Enter., Inc.,* 793 F.2d 1456 (5th Cir.1986), *cert. denied,* 479 U.S. 1034, 107 S.Ct. 884, 93 L.Ed.2d 837, *and cert. denied,* 479 U.S. 1089, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987).

[17]*Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21.

[18]*Hook v. Morrison Milling Co.,* 38 F.3d 776, 784 (5th Cir.1994) (internal quotations omitted) (quoting *Christopher v. Mobil Oil Corp.,* 950 F.2d 1209 (5th Cir.), *cert. denied,* 506 U.S. 820, 113

state law claims when the claims "affec[t] only [an employee's] employer/employee relationship with [an employer] and *not* her administrator/beneficiary relationship with the company."[19]  More relevant to our analysis today is our earlier admonition that an employer may not use its ERISA plan as a "gimmick" to trigger preemption and thereby avoid litigation in state court.[20]  In the classic metaphor, ERISA preemption may be used as a shield but not as a sword.

In the instant case, the district court concluded that Rokohl's TCHRA claim was sufficiently connected to the Texaco LTD plan to warrant a holding that the claim is preempted by ERISA.  We disagree.  The heart of Rokohl's claim is that he was wrongfully discharged by Texaco on the basis of his disability.  As such, Rokohl's claim would have arisen whether Texaco had terminated his employment through the use of the LTD plan or in some other manner.  Indeed, Rokohl's cause of action would pertain even if Texaco had not maintained an ERISA plan at all.  Accordingly, the claim does *not* "cease to exist" when " "stripped of [its] link' " to the

---

S.Ct. 68, 121 L.Ed.2d 35 (1992)).

[19]*Hook,* 38 F.3d at 783 (emphasis in original) (holding that an employee's unsafe workplace claim was not preempted by ERISA, even though the employee had elected to participate in an ERISA plan that included a waiver clause prohibiting participants in the plan from filing suit against the company under the state law in question);  *see also Sommers Drug Stores Co.,* 793 F.2d 1456 (holding that ERISA did not preempt breach of fiduciary duty claim brought by plan itself, as claim actually centered on relations between corporate director and shareholder);  *Memorial Hospital Sys. v. Northbrook Life Ins. Co.,* 904 F.2d 236 (5th Cir.1990).

[20]*See Hook,* 38 F.3d at 782.

plan.[21]    Moreover, Rokohl's claim fundamentally affects his employee-employer relationship with Texaco, and only incidentally affects his beneficiary-administrator relationship with the plan.[22] As such, the connection between Rokohl's claim and Texaco's ERISA-qualified plan is too remote and tenuous to warrant preemption.[23]

Indeed, if we were to accept Texaco's argument that ERISA preempts Rokohl's TCHRA claim, we would effectively permit Texaco to hide behind its ERISA plan in avoidance of state anti-discrimination laws.  To do that would be to allow an employer to disguise its firing decisions—even decisions to dismiss an employee because of his or her race, gender, age, or disability—as benefits decisions, in avoidance of state anti-discrimination statutes, simply by adopting an ERISA-qualified plan and awarding each discharged employee benefits under that plan.  A human resources director would not have to be the proverbial rocket scientist to devise, for example, an ERISA early retirement severance plan that could evade state age discrimination laws. Congress could not have intended for ERISA—a statute " "designed to promote *the interests of employees* ... in employee benefit plans' "[24]—to operate so as to "vest employers with such authority."[25]  That

---

[21]*See id.* at 784.

[22]*See id.* at 783.

[23]*See id.; Sommers Drug Stores,* 793 F.2d 1456; *Memorial Hospital Sys.,* 904 F.2d 236.

[24]*Hook,* 38 F.3d at 785 (quoting *Shaw,* 463 U.S. at 90, 103 S.Ct. at 2896 (emphasis added)).

[25]*Id.*

would turn ERISA preemption on its head, putting the cart of disability benefits under ERISA before the horse of employment termination decisions.  First comes discharge and then comes determination of benefits, not vice versa as Texaco contends.  Thus the district court erred in concluding that Rokohl's TCHRA claim was preempted by ERISA.

C. GENUINE ISSUE OF MATERIAL FACT

Texaco argues in the alternative that, even if the TCHRA claim is not preempted by ERISA, a grant of summary judgment in its favor is appropriate because Rokohl failed to raise a genuine issue of material fact on the question whether Texaco violated the TCHRA. The district court disposed of the TCHRA claim on ERISA preemption grounds, however, without ever addressing whether Rokohl had raised sufficient issues of fact to survive summary judgment.  Even though, in our de novo review, we could consider summary judgment on that issue, we think it advisable to remand the claim to the district court for it to give this issue its initial consideration.[26]  In so doing, we intimate no opinion on the merits of Texaco's alternative argument.

---

[26]Texaco also argues that, as Rokohl has accepted LTD benefits, he is estopped from pursuing his TCHRA wrongful discharge claim. In support of this contention, Texaco cites two cases holding that once employees have accepted retirement benefits, they are estopped from recovering wages pursuant to implied or express employment contracts. *See Hurt v. Standard Oil Co. of Texas,* 444 S.W.2d 342 (Tex.Civ.App.1969, no writ); *Allen v. Dempster Mill Mfg. Co.,* 402 S.W.2d 809 (Tex.Civ.App.1966, writ ref'd n.r.e.).  Texaco cites no cases establishing a waiver or estoppel principle when, as here, an employee brings a discrimination claim against the employer;  and no such case emerged after independent research.  Accordingly, Texaco's estoppel argument is unavailing.

## IV.

## CONCLUSION

For the foregoing reasons, the district court's grant of summary judgment in favor of Texaco on Rokohl's TCHRA claim is reversed, and the claim is remanded for further consideration by the district court consistent with this opinion.

REVERSED and REMANDED.

.   .   .   .   .