**Mattie STILES, Appellant,**

v.

**MEMORIAL HERMANN HEALTHCARE SYSTEM, Appellee.**

No. 01–05–00473–CV.

Court of Appeals of Texas, Houston (1st Dist.).

Jan. 11, 2007.

Rehearing Overruled Feb. 22, 2007.

---

Morris Tabak, Law Offices of Lin & Associates, Houston, TX, for Appellant.

Wesley Ralph Ward, Richard P. Colquitt, Fulbright & Jaworski L.L.P., Houston, TX, for Appellee.

Panel consists of Chief Justice RADACK and Justices JENNINGS and ALCALA.

**OPINION ON REHEARING**

TERRY JENNINGS, Justice.

We grant appellee's motion for rehearing. TEX.R.APP. P. 49.3. We vacate our June 15, 2006 judgment, withdraw our June 15, 2006 opinion, and substitute this opinion in its place.

Appellant, Mattie Stiles, challenges the trial court's order dismissing her breach of contract and fraud suit against appellee, Memorial Hermann Healthcare System ("Memorial"). In her sole issue, Stiles contends that the trial court erred in concluding that it had no subject matter jurisdiction over her claims.

We reverse and remand for proceedings consistent with this opinion.

### Factual and Procedural Background

Stiles's action arose out of an injury that she sustained on January 4, 2002, while working at Memorial. Stiles asserts that

Memorial agreed to pay her health care expenses related to the incident in consideration of Stiles's releasing Memorial from liability for any negligence on its part. Stiles attached an unsigned "Release of Claims and Covenant not to Sue" to her second amended petition evidencing such an agreement. The release referenced Memorial's Occupational Health Plan (the "Plan") and stated that notwithstanding Stiles's release of her claims against Memorial, Stiles retained her rights to benefits under the Plan. Stiles alleges that Memorial refused to pay her medical bills pursuant to the release.

Memorial answered Stiles's suit with a general denial and argued, among other things, that the trial court lacked subject matter jurisdiction to hear Stiles's claims. Memorial then filed a notice of removal, asserting that Stiles's petition stated an action to recover benefits under the Plan, which qualified under the Employee Retirement Income Security Act of 1974 ("ERISA"),[1] thereby triggering complete preemption under ERISA's civil enforcement provisions.[2] The case was removed to the United States District Court of the Southern District of Texas. In Stiles's subsequent motion to remand, she contended that it was Memorial's breach and fraud related to the release agreement, distinct from any rights that she held under the Plan, that formed the basis of her lawsuit. The United States District Court remanded the case back to the trial court for lack of federal jurisdiction, stating that "substantial doubt remains as to whether [Stiles's] claim does in fact fall within the preemptive scope of ERISA."

Upon remand, Memorial moved to dismiss the lawsuit, again arguing a lack of subject matter jurisdiction based on ERISA preemption. The trial court granted the motion to dismiss, concluding that Stiles's state law claims for breach of contract and fraud were "addressed by" and "related to" the Plan, that ERISA "completely preempted" Stiles's state law claims, and that it had no subject matter jurisdiction over the claims.

## Standard of Review

■■■ Subject matter jurisdiction is a question of law, to which we apply a de novo standard of review. *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex.1998). A claim of federal preemption is a challenge to a state court's subject matter jurisdiction and cannot be waived. *See Int'l Longshoremen's Ass'n v. Davis,* 476 U.S. 380, 392, 106 S.Ct. 1904, 1913, 90 L.Ed.2d 389 (1986). When courts speak of "preemption of jurisdiction," they are not referring to the applicability of federal law; rather, they refer to Congress's ability to require resolution of certain claims exclusively in a federal forum. *Mills v. Warner Lambert Co.,* 157 S.W.3d 424, 427 (Tex. 2005). "In any doubtful case all intendments of the plaintiff's pleading will be in favor of the jurisdiction." *Peek v. Equip. Serv. Co. of San Antonio,* 779 S.W.2d 802, 804 (Tex.1989).

A trial court's findings of fact have the same weight as a jury's verdict upon special issues and are reviewable for sufficiency of the evidence to support them. *Amador v. Berrospe,* 961 S.W.2d 205, 207 (Tex. App.-Houston [1st Dist.] 1996, writ denied). A trial court's conclusions of law are reviewed de novo. *Material P'ships, Inc. v. Ventura,* 102 S.W.3d 252, 257 (Tex.

---

**1.** Employee Retirement Income Security Act of 1974 ("ERISA"), Pub.L. No. 93–406, 88 Stat. 829 (1974) (codified as amended at 29 U.S.C. §§ 1001–1461 (2005)).

**2.** *See* 29 U.S.C. § 1132(a)(1)(B).

App.-Houston [14th Dist.] 2003, pet. denied).

### ERISA Preemption

■ Congress enacted ERISA as a comprehensive system to regulate employee benefit plans "to promote the interests of employees and their beneficiaries in employee benefit plans ... [and] to protect contractually defined benefits." *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113, 109 S.Ct. 948, 956, 103 L.Ed.2d 80 (1989). The act regulates both pension plans and welfare plans that provide benefits for contingencies such as illness, accident, disability, death, or unemployment. *Cathey v. Metro. Life Ins. Co.,* 805 S.W.2d 387, 388 (Tex.1991). While it provides standards and rules governing reporting, disclosure, and fiduciary responsibility for pension and welfare plans, ERISA does not mandate any particular benefits. *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 90–91, 103 S.Ct. 2890, 2896–97, 77 L.Ed.2d 490 (1983).

■ ERISA includes expansive preemption provisions, which are intended to ensure that employee benefit plan regulation would be "exclusively a federal concern." *Alessi v. Raybestos–Manhattan, Inc.,* 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981). To this end, ERISA "shall supercede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan." Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1144(a) (2005). ERISA preemption applies not only to state laws but to all forms of state action dealing with the subject matters covered by the statute. 29 U.S.C. § 1144(c)(1); *see also Shaw,* 463 U.S. at 98, 103 S.Ct. at 2900. Accordingly, when a state court suit, alleged in terms of a state common-law or statutory cause of action, relates to an employee welfare benefit plan, ERISA may preempt the state

law in favor of federal law. *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63–66, 107 S.Ct. 1542, 1546–48, 95 L.Ed.2d 55 (1987); *Gorman v. Life Ins. Co. of N. Am.,* 811 S.W.2d 542, 545 (Tex.1991).

■ The ERISA preemptive provision is to be broadly construed. *See Aetna Health Inc. v. Davila,* 542 U.S. 200, 217, 124 S.Ct. 2488, 2500, 159 L.Ed.2d 312 (2004) (stating that Court's understanding of ERISA's preemptive effect is informed by "overpowering federal policy" embodied in ERISA's civil enforcement provision, which was intended to create "an exclusive federal remedy"). However, the Supreme Court has cautioned that "[s]ome state actions may affect employee benefit plans in too tenuous, remote, or peripheral a manner to warrant a finding that the law 'relates to' the plan." *Shaw,* 463 U.S. at 100 n. 21, 103 S.Ct. at 2901 n. 21. To determine whether a state law claim has the forbidden connection to ERISA, we look to both the objectives of ERISA and the effect of the asserted state law on ERISA plans. *Egelhoff v. Egelhoff,* 532 U.S. 141, 147, 121 S.Ct. 1322, 1327, 149 L.Ed.2d 264 (2001). Because the scheme is deemed to be comprehensive with regard to the remedies provided and excluded, any state law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy conflicts with the Congressional intent to make the ERISA remedy exclusive and is preempted. *See Davila,* 542 U.S. at 209, 124 S.Ct. at 2495. The Fifth Circuit Court of Appeals has propounded a two-pronged test wherein ERISA preempts a state law claim if "(1) the state law claim addresses an area of exclusive federal concern, such as the right to receive benefits under the terms of an ERISA plan; and (2) the claim directly affects the relationship between the traditional ERISA entities-the employer [in its role as administrator], the

plan and its fiduciaries, and the participants and beneficiaries." *Hubbard v. Blue Cross & Blue Shield Ass'n*, 42 F.3d 942, 945 (5th Cir.1995).

ERISA also contains express jurisdictional provisions. Section 502(a)(1)(B) provides that state courts of competent jurisdiction and district courts of the United States have concurrent jurisdiction of actions by a beneficiary: (1) to recover benefits due under the terms of a plan; (2) to enforce rights under a plan; or (3) to clarify rights to future benefits. 29 U.S.C. § 1132(a), (e). However, state law claims seeking relief within the scope of § 502(a)(1)(B) are completely preempted.[3] In instances of complete preemption, a state law claim may be re-characterized as an action to recover benefits under ERISA, thus giving a state court jurisdiction, although the claim may be subject to removal. *Arana v. Ochsner Health Plan*, 338 F.3d 433, 439 (5th Cir.2003).

Outside the actions contemplated by section 502(a)(1)(B), any other ERISA civil action is within the exclusive jurisdiction of the federal courts. *See* 29 U.S.C. § 1132(e)(1). That is, if a claim relates to an employee benefit plan governed by ERISA but it is not a claim for benefits due under the policy or a suit to enforce or clarify rights under the policy,

it falls within the exclusive jurisdiction of the federal courts.[4] Accordingly, for state law claims that do not fall within the scope of 29 U.S.C. 1132(a)(1)(B) and (e)(1), an assertion of ERISA preemption is, if successful, jurisdictional. *Saks v. Franklin Covey Co.*, 316 F.3d 337, 349–50 (2d Cir. 2003). In those cases, preemption is not waivable. *Id.*

Despite ERISA's expansive scope, if a state law claim does not seek to recover or replace benefits under an employee welfare benefit plan and is based on a violation of a legal duty independent of ERISA, it is not preempted by ERISA. *Haynes v. Haynes*, 178 S.W.3d 350, 354 (Tex.App.-Houston [14 Dist.] 2005, pet. denied); *see also Davila*, 542 U.S. at 210, 124 S.Ct. at 2496. Necessarily, state law claims based on the violation of a legal duty independent of ERISA would not "relate to" ERISA so as to implicate preemption or federal jurisdiction. In such a case, absent diversity, and with no other basis for "arising under" jurisdiction, it is the federal court that would be deprived of subject matter jurisdiction to hear the cause. *See, e.g., Peacock v. Thomas*, 516 U.S. 349, 352, 116 S.Ct. 862, 865–66, 133 L.Ed.2d 817 (1996) (holding veil-piercing claim does not state cause of action under ERISA and cannot independently support

---

**3.** In contrast to ordinary or conflict preemption under section 514(a), complete preemption not only displaces substantive state law, but also "recharacterizes" preempted state law claims as "arising under" federal law for the purposes of determining federal question jurisdiction, typically making removal available to the defendant. *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64–65, 107 S.Ct. 1542, 1546–47, 95 L.Ed.2d 55 (1987). Although both parties address this distinction, we note that "complete preemption" is less a principle of substantive preemption than it is a rule of federal jurisdiction. *Id.* Since, with either "ordinary" or "complete" preemption, a state court may retain concurrent jurisdiction over

a claim, the distinction is not particularly relevant to the issue in this case. It is section 1132(e)(1) which specifies when there is exclusive federal jurisdiction. *See* 29 U.S.C. § 1132(e)(1).

**4.** We note that the exercise of exclusive federal jurisdiction derives from the forum-preempting language of section 502(a), rather than the existence of a preemption defense. *See* 29 U.S.C. § 1132(e)(1) ("the district courts of the United States shall have exclusive jurisdiction of civil actions under this subchapter...."); *Mills v. Warner Lambert Co.*, 157 S.W.3d 424, 427 (Tex.2005).

federal subject matter jurisdiction); *Hook v. Morrison Milling Co.*, 38 F.3d 776, 785–86 (5th Cir.1994) (affirming remand of common law negligence suit after finding claim did not relate to and therefore was not preempted by ERISA). Accordingly, we must determine what, if any, preemptive effect ERISA has in the instant case and the resulting effect on subject matter jurisdiction.

■ In its original briefing, Memorial argues that "the trial court properly dismissed this case, because Stiles's state law claims were completely preempted by federal law." Stiles, in her briefing, essentially argues that the trial court should have exercised concurrent jurisdiction over her claims.

■ As noted above, even if Memorial is correct that ERISA preempts Stiles's state law claims, it does not necessarily follow that the trial court lacked jurisdiction over the claims. Federal preemption is distinguished from exclusive federal jurisdiction, because "[i]n the former, federal substantive law supplants state law but absent other provisions both state and federal courts have concurrent jurisdiction of actions arising under that law; in the latter, only the specified federal instrumentalities have jurisdiction of the matter, irrespective of the law to be applied." *Chappell v. SCA Servs., Inc.*, 540 F.Supp. 1087, 1095 (D.Ill.1982). Therefore, although federal preemption is often a federal defense to the plaintiff's suit, it does not ordinarily deprive a state court of jurisdiction. *Taylor*, 481 U.S. at 63, 107 S.Ct. at 1546. "There are thus some cases in which a state law cause of action is preempted, but only a state court has jurisdiction to so rule." *Romney v. Lin*, 105 F.3d 806, 813 (2d Cir.1997).

■ ERISA provides that state courts of competent jurisdiction and district courts of the United States have concurrent jurisdiction of actions under section 502(a) to (1) recover plan benefits, (2) enforce plan rights, or (3) clarify rights to future benefits. 29 U.S.C. § 1132(a)(1)(B); *Gorman*, 811 S.W.2d at 545. Also as noted, a beneficiary's state law claim that "relates to" an ERISA plan but does not fall into one of the three foregoing categories under 29 U.S.C. § 1132(a)(1)(B) is within the exclusive jurisdiction of the federal courts, and the resulting ERISA preemption deprives a state court of jurisdiction over the claim. *Gorman*, 811 S.W.2d at 547–49; *see also Southland Life Ins. Co. v. Estate of Small*, 806 S.W.2d 800, 801 (Tex.1991). In its original briefing, Memorial argues that Stiles's claims fall within this latter category because her claims are related to an ERISA-qualifying plan but "did not seek plan benefits ... [but] sought something extra—all medical expenses, whether consistent with plan benefits or not." Thus, Memorial asserts that "[the trial court] was correct to dismiss [Stiles's] claim as being completely preempted by ERISA."

In our original opinion, we stated that "Stiles's petition neither seeks benefits under the Plan, nor claims that Memorial improperly processed her claim for benefits." We held that the release "does not qualify Memorial's promise regarding 'payment and future payment of [Stiles's] medical bills,'" and that "[t]he release expressly demonstrates Memorial's promise to pay Stiles's medical bills independent of the Plan."

In its motion for rehearing, Memorial contends that this Court erred in holding that Memorial promised to pay Stiles's medical bills independent of the benefits plan offered by Memorial, in finding that no aspect of ERISA preemption applied to Stiles's claims, and in not finding that Stiles's claims were "completely preempt-

ed" by ERISA and that Stiles's claims should have been remanded to the trial court to be considered as a claim for benefits under ERISA.

It must first be noted that Memorial's arguments on rehearing are distinct from the arguments it made in its original briefing. In its original briefing, Memorial argued that because Stiles sought a remedy to which she was not entitled, her claims were "completely preempted" and, as a result, the trial court "lacked subject matter jurisdiction." Memorial now concedes on rehearing that the trial court did not lack jurisdiction and asserts, for the first time, that "the correct outcome in this appeal is a remand to the trial court for adjudication of Stiles's state law complaints re-characterized as claims for benefits under 29 U.S.C. § 1132(a)."

Memorial's main complaint on rehearing concerns this Court's conclusion that Memorial promised to pay Stiles's bills "independent of the Plan." Memorial asserts that this conclusion "expands Memorial's potential exposure." Memorial states that this Court failed to realize that the release was "an integral component of the Plan" and that "under the Release, the payment of healthcare expenses for Stiles was contemplated by the parties through the Plan." Memorial asserts that "[t]he dramatic expansion of Memorial's potential exposure ... undermines the most basic protections afforded to Plan Sponsors and Plan Administrators under ERISA."

We begin our analysis of Memorial's arguments, now clarified on rehearing, by considering the language of the Release, which provides:

> In consideration for the payment and future payment of my medical bills and other benefits provided by Memorial, which payment(s) relate to my work-related Incident, ... I ... unconditionally release, hold harmless and forever discharge [Memorial] ... from any and all demands, causes of action, suits, claims, charges, liabilities, damages, costs, and expenses ... arising out of any and all known and unknown personal injuries and property damage resulting or to result from the incident ... excepting only any claims for benefits that I may have under the terms and conditions of the [Plan]. **I understand that any claim I may have for benefits under the Plan is not affected by this Release.**
>
> I understand and agree that my signature on this [Release] will forever prevent me ... from filing a lawsuit ... for damages, compensation, and any other relief with respect to any claims that relate to Incident, except for any benefits claims under the Plan.... [T]his Release specifically covers and releases any claims directly or indirectly resulting from any negligence on the part of [Memorial].
>
> I hereby promise that neither I nor any other Releasor will file ... any negligence cause of action, ..., or any other type of action or claim, against [Memorial] ... which relates to the Incident or the actions of [Memorial] arising therefrom, expect [sic] I reserve my right to file claims for benefits under the Plan.

(Emphasis in original.)

Memorial asserts that this release "contains no independent promise" to pay Stiles's medical bills, "but simply a reference to the consideration to be provided by Memorial, consideration which is to be provided by and through the Plan." Memorial asserts that this Court has rewritten the terms of the release by ignoring the numerous references to the Plan in the release.

Contrary to Memorial's assertions, the release does not "provide[ ] that in return

for Stiles's release of Memorial, she can participate in the benefits provided by the Plan."[5] If, in fact, the release said what Memorial represents, we might agree with Memorial's argument, which again, was presented for the first time on rehearing. However, as we noted in our original opinion, Stiles, through her claims for breach of contract and fraud, seeks damages for Memorial's alleged failure to honor the terms of the release, which expressly required Stiles to disclaim her right to sue Memorial for any actions arising out of the incident "in consideration for payment and future payment of [her] medical bills and other benefits." Although the Plan is referenced throughout the release, the release refers specifically to the Plan only to make clear that any claim for Plan benefits is excluded from the scope of the release.

Although the release indicates that any claim to Plan benefits survives the execution of the release, there is no indication that, by executing the release, Stiles was only entitled to the payment of her medical bills *if such payment is consistent with the benefits offered under the terms of her Plan.* Memorial certainly could have accomplished its desired goal by drafting a different release. For example, the re-

lease could have expressly required that Stiles was required to execute the release, pursuant to the terms of the Plan, in order for her to be entitled to receive her benefits, which may have included the payment of her medical bills *in accordance with the terms of the Plan.* Instead, Stiles signed a release forgoing her right to sue Memorial in exchange for Memorial's unqualified promise to pay her medical bills relating to her "work-related Incident." Simply put, pursuant to the unambiguous terms of the release, Stiles is entitled to the payment and future payment of her medical bills relating to her "work-related Incident," regardless of whatever benefits are offered under the terms of the Plan. There is no indication in the release that she is entitled to the payment of medical bills only to the extent such payment is consistent with the benefits offered under the terms of the Plan. As Stiles acknowledged in signing the release, any claim to benefits under the Plan "**is not affected by this Release.**" Even Memorial recognizes, in its original brief, that "[Stiles] did not seek plan benefits" and instead "sought something extra—all medical expenses, whether consistent with plan benefits or not." Me-

---

5. Memorial, citing *Pratt–Shaw v. Pilgrim's Pride Corp.*, 122 S.W.3d 825, 827–28 (Tex. App.-Dallas 2003, pet. denied), asserts that it is a "common arrangement" for a release to provide that in return for an employee's release of an employer, the employee can participate in plan benefits. In *Pratt–Shaw*, Pratt died as a result of injuries he sustained while at work. Pratt's employer offered its employees voluntary participation in a benefit plan. *Id.* After his death, "Pratt's medical expenses and an accidental death benefit were paid in accordance with the Plan's terms." *Id.* at 828. Pratt's survivors brought suit against the premises owner of the job site where Pratt was injured. *Id.* The premises owner argued that the claims were barred by the release language contained in the "agreement to participate in the Plan," which Pratt signed before his death. *Id.* This agreement stated,

"You may have certain rights under the common laws of Texas for damages arising out of work-related illness or injury. If, however, you choose to participate in the [Plan] by requesting the benefits provided in the Plan, you hereby agree to accept the Plan benefits as the only benefits you are entitled to receive in the event of a work-related injury and to waive any and all other causes of action ..." *Id.* at 828 n. 1. The court noted that this agreement disclosed to the employee that "the employer offers the benefits of the Plan instead of the common law rights." *Id.* at 828. Here, however, the release does not state that, by signing it, Stiles is entitled only to benefits under the Plan. Rather, the release reflects that Stiles is entitled to the payment and future payment of her medical bills relating to her "work-related Incident."

morial makes the point: Stiles seeks this remedy, i.e. "something extra," because, if executed, that is what the release promises.

Memorial urges this Court to consider the Plan in interpreting the release, citing "the generally accepted principles of contract interpretation, that all writings that pertain to the same transaction will be considered together." *See DeWitt County Elec. Coop., Inc. v. Parks,* 1 S.W.3d 96, 102 (Tex.1999). We agree that we should consider the Plan in interpreting the release. The Plan states, in relevant part:

> As a condition of the Plan, ... the Plan Administrator reserves the right to require any Employee who incurs a Bodily Injury ... to execute and deliver to the Plan Administrator, on a form provided by the Plan Administrator, a full release of liability and covenant not to sue (except with respect to Benefits claims under the Plan), before Benefits are awarded under the Plan or at any other time in consideration for the award of any Benefits.

The Plan contemplates the execution of a release that informs an employee that she is being required to execute the release, as set forth by the terms of the Plan, in order to be entitled to receive the payment of her medical bills pursuant to the terms of the Plan. This is the type of release that Memorial describes in its motion for rehearing; however, it is not the type of release attached to Stiles's petition. Again, instead, Stiles gave up her right to sue in exchange for Memorial's unqualified promise to pay her medical bills, not merely a promise to furnish her benefits in accordance with the terms of the Plan.

In its original briefing, Memorial asserts that Stiles's state law claims were completely preempted and "the trial court's decision properly followed *Copling v. The Container Store,* 174 F.3d 590, 597–99 (5th Cir.1999)." *Copling,* however, is inapplicable. It involved an appeal from a remand order for a breach of contract suit related to an ERISA plan. *Id.* at 594–95. Although the court was precluded from reviewing the remand order, Justice Wiener, in concurrence, noted that "counsel for Copling so grossly mischaracterized his client's cause of action as a state breach of contract claim as to approach frivolousness" and that Copling himself had characterized the claim as one for "misrepresentation of the terms of the Plan." *Id.* at 597–98. Justice Wiener then encouraged the state court to which the case was remanded to recognize the complete preemption issue that "lurks in the record of this case." *Id.* at 599. Here, Stiles's suit is not one to recover benefits, enforce rights under the plan, or clarify rights to future benefits, and thus, her claims are not completely preempted by ERISA's civil enforcement provisions. *See* 29 U.S.C. § 1132(a)(1)(B); *Taylor,* 481 U.S. at 66, 107 S.Ct. at 1547–48. Moreover, Stiles's claims arise out of the release agreement and do not concern the terms of the Plan.

Other federal cases are more on point and provide guidance. In *Westbrook v. Beverly Enterprises,* a non-subscribing employer offered an ERISA plan that provided medical benefits for work-related injuries. 832 F.Supp. 188, 189 (W.D.Tex. 1993). The plan in *Westbrook* also contained a "waiver-of-right-to-sue" clause, whereby the employee waived his right to sue for work-related injuries in exchange for medical benefits. *Id.* In rejecting the employer's preemption claim, the court concluded that neither the cause of action (an unsafe workplace action) nor the waiver related to the ERISA plan because both involved only the employee-employer relationship and not the administrator-beneficiary relationship. *Id.* at 189–92.

Similarly, in *Hook*, the court held that Hook's unsafe workplace claim was "totally independent from the existence and administration of" the ERISA plan. 38 F.3d at 784. The claim for negligent misrepresentation was not preempted "because it neither sought benefits under the plan nor alleged improper processing of benefits." *Id.* A few months after the decision in *Hook*, the court again held that an employee's common law occupational injury claim did not relate to an employer's ERISA plan. *Tex. Health Enters., Inc. v. Reece*, 44 F.3d 243, 245 (5th Cir.1994).

In *Smith v. Texas Children's Hospital*, the court held that preemption did not apply to a plaintiff's fraudulent inducement claim because the claim was not necessarily dependent upon the plaintiff's rights under the ERISA plan. 84 F.3d 152, 155 (5th Cir.1996). The plaintiff alleged that she relinquished her accrued benefits with her previous employer in reliance upon Texas Children's alleged misrepresentations. *Id.* at 153. Because her claim was not based solely on Texas Children's denial of benefits, the court concluded that she could have a claim based on the benefits she lost as a result of being induced to leave her former employer. *Id.* at 154–55.

This Court, in *Keifer v. Spring Shadows Glen*, followed *Hook* and reversed a summary judgment in favor of a non-subscriber employer and held that a common law negligence suit against an employer does not "relate to" the employer's ERISA plan. 934 S.W.2d 785, 787–88 (Tex.App.-Houston [1st Dist.] 1996, writ denied); *see also Mem'l Hosp. Sys. v. Northbrook Life Ins. Co.*, 904 F.2d 236, 243–50 (5th Cir. 1990) (holding negligent misrepresentation claim was not preempted because it neither sought benefits under plan nor alleged improper processing of benefits); *Perkins v. Time Ins. Co.*, 898 F.2d 470, 473 (5th Cir.1990) (holding claim that insurance agent fraudulently induced insured to surrender coverage under existing policy to participate in ERISA plan which did not provide promised coverage 'relate[d] to' that plan only indirectly); *Nunez v. Wyatt Cafeterias, Inc.*, 771 F.Supp. 165, 169 (N.D.Tex.1991) ("The fact that plaintiff's recovery in this action could be reduced by virtue of payments received by plaintiff under the plan provides, at most, an indirect economic impact between the two.").

■ Although "ERISA's preemptive scope may be broad, ... it does not reach claims that do not involve the administration of plans, even though the plan may be a party to the suit or the claim relies on the details of the plan." *Hook*, 38 F.3d at 784. Here, the release reflects that Stiles bargained for a distinct and independent promise from Memorial to pay her medical bills in consideration of her release of any claims against Memorial arising from the incident. We conclude that the underlying conduct complained about in this case, breach of contract and fraud, can be "divorced from its connection to the employee benefit plan."[6] *Hook*, 38 F.3d at 783 (quoting *Christopher v. Mobil Oil Corp.*, 950 F.2d 1209, 1220 (5th Cir.1992)); *see also Rokohl v. Texaco, Inc.*, 77 F.3d 126, 129 (5th Cir.1996). Moreover, we note that Stiles's state law claims, as pleaded, do not address areas of exclusive federal concern as she is not seeking the right to receive benefits under the terms of an ERISA plan, nor do her claims directly affect the relationship among the traditional ERISA entities. *See Mem'l Hosp. Sys.*, 904 F.2d at 245.

---

**6.** We make no comment with respect to the merits of Stiles's claim. We conclude only, that as pleaded, Stiles's petition states a cause of action to recover based on a promise distinct and independent of the Plan.

We hold that Stiles's claims based on the breach of the release agreement do not "relate to" Memorial's ERISA-qualifying Plan. Accordingly, we further hold that the trial court erred in dismissing Stiles's causes of action for lack of subject matter jurisdiction.

We sustain Stiles's sole issue.

### Conclusion

We reverse the order of the trial court and remand for further proceedings consistent with this opinion.

Chief Justice RADACK, concurring in the judgment only.